AMELIA A. KNIGHT *versus* THE PORTLAND, SACO & PORTS-
MOUTH RAILROAD COMPANY.

A through ticket over three several distinct lines of passenger transporta-
tion, issued in the form of three tickets on one piece of paper, and recog-
nized by the proprietors of each line, is to be regarded as a distinct ticket
for each line.

The rights of a passenger purchasing such a ticket, and the liabilities of the
proprietors of the several lines recognizing its validity, are the same as if
the purchase had been made at the ticket office of the respective lines.

Common carriers of passengers are not bound to insure the absolute safety
of their passengers; but they are required to exercise the strictest care
consistent with the reasonable performance of their contract of transporta-
tion.

To render them liable for an injury to a passenger while under their charge,
it is enough if it was caused solely by any negligence on their part, how-
ever slight, if, by the exercise of the strictest care and precaution, reasona-
bly within their power, the injury would not have been sustained.

Where the plaintiff's ticket entitled her to a passage over the defendants'
road to Portland, and by steamboat from Portland to Belfast; and the de-
fendants had built their track upon their wharf down to the steamboat,
and had run their passenger train upon it for a time, and still continued to
run their baggage train there; and they directed their passengers verbally,
or by printed sign, to use the wharf as a passage-way to the boat, and they
did so use it; and they made the wharf subsidiary and necessary to the
proper use and enjoyment of their road; in an action by the plaintiff to
recover for an injury upon the wharf; — *Held,*

1. That the defendants are bound to exercise the same degree of care, in
making the wharf safe and convenient for their through passengers to trav-
el over, as is required of common carriers of passengers, although they re-
quired them to disembark at their depot, forty rods distant from the steam-
boat; and,

2. That this liability continued until, in the ordinary course of their
passage over the wharf, they reached the point where the liability of the
steamboat company commenced.

ON EXCEPTIONS, and MOTION to set aside the verdict as
being against the weight of evidence and excessive in
amount of damages.

CASE, for injury received at the slip on the defendants'
wharf in Portland.

The defendants requested the presiding Judge to instruct the jury:—

1. That the defendants were under no obligations to carry the plaintiff beyond the point at which they regularly received and discharged passengers in Portland:—

2. That, when they had safely carried the plaintiff from their station in Berwick to their station in Portland, and had safely delivered her from their depot in the latter place, their duty as carriers of passengers ceased:—

3. That the wharf in Portland, used by the steamboat company for the purposes of its business, though owned by the defendants, was not such a part of the appliance of the defendants' railroad as the defendants, in their capacity of carriers of passengers, are responsible for the condition of:—

4. That, if the jury should find that a slip or drop was necessary for the transaction of the business of the wharf, and it was constructed in the best known manner and with all usual and reasonable precautions for safety, and had no unreasonable or improvident space for its movement, but only sufficient for its easy and convenient operation, then the defendants have been guilty of no laches and cannot be held in this action.

The presiding Judge declined to give the first three requested instructions, but gave the fourth, with this addition:—"but, if the space between the wharf and slip, though necessary to be kept open for the movement of the slip in raising it or letting it down, did not need to be kept open, and, while in actual use for passengers to pass over, the care required for common carriers of passengers rendered it necessary that it should be closed or guarded on such occasions, and the accident was caused wholly by the neglect of the defendants to close it or to provide all reasonable safeguards against passengers stepping into it, the defendants would be liable."

But the jury, together with other things not objected to, were instructed as follows:—

Common carriers of passengers are required to exercise

the strictest care which is consistent with the reasonable performance of their contract of transportation.

While they are not bound to insure the absolute safety of their passengers, they are required to make use of such safeguards for the protection of their passengers as science and art have devised, and as experience has proved to be efficacious in accomplishing their object.

It is not sufficient that they exercise slight, common, or even great care.

They have discharged their duty only when they have employed all the means reasonably in their power to prevent accident.

To render them liable for an injury to passengers while under their charge, it is not necessary that they be guilty of gross or great negligence; it is enough if the accident was caused solely by any negligence on their part, however slight, if, by the exercise of the strictest care or precaution, reasonably within their power, the injury would not have been sustained.

That the arrangements between the several connecting companies, by which each sold tickets through, only imposed on each the obligation to carry passengers over its own portion of the entire route.

If the plaintiff purchased a through ticket to Belfast at Lawrence, and the defendants recognized the validity of that ticket by passing her over their road, they took upon themselves the duties and responsibilities of common carriers of passengers as effectually as if the ticket had been purchased at their office in Berwick.

The plaintiff's ticket entitled her to a passage over the defendant's road to Portland, and, by steamboat, from Portland to Belfast; and, if the defendants built their track down to the steamboat upon the wharf, running their passenger train down upon it for a time, and their baggage train there at the time of the accident; and, if they directed their passengers verbally or by a printed sign to use the wharf as a passage-way to the boat, and they did so use it, and, if they

made the wharf subsidiary and necessary to the proper use and enjoyment of their road, they are bound to exercise the same degree of care in making the wharf safe and convenient for passengers to travel over, which is required of common carriers of passengers, though at the time of the accident they detained their passenger train at their depot, and required their passengers to disembark at that place.

The jury, under these instructions and others not excepted to, returned a verdict for the plaintiff, and assessed damages at two thousand five hundred dollars, and the defendants alleged exceptions.

The principal facts testified to by the plaintiff appear in the opinion.

*Nathan Webb*, for the defendants.

First, second and third requested instructions should have been given. Defendants were bound to carry plaintiff safely from Berwick to their depot at Portland only, and not to deliver her to the next carrier; otherwise, they could control her action. Their depot at Portland is their station for the discharge of their passengers, and, when the passengers have safely left that station, defendants' liability has ceased. The location of a railroad company's passenger stations fixes the points where their liabilities begin and end, and these must be safe. Their liability does not extend over all the contiguous property they may own. The fact of ownership of the wharf does not vary their responsibility as carriers of passengers. The distance of the wharf negatives any pretence that it was a necessary and immediate appliance to their depot. Wharves are auxiliary to water and not land transportation, and, in this case, it was an appliance to the steamboat and not to railroad. Defendants had a chartered right to regulate the point to which their trains should go and their passengers should end their transit, and to change it at will, only taking care that they be safe. The refusal to give the requested instructions operated a denial of these principles and extended the requirement of utmost care beyond its proper limits.

2. The addition to the 4th requested instruction is erroneous, because it in effect instructed the jury that the defendants, by virtue of the plaintiff's ticket, were liable for the condition of the slip at the end of the wharf, 40 rods from the station where they discharged their passengers.

3. The instruction, that the defendants "have discharged their duty only when they have employed all the means reasonably in their power to prevent accident," is incorrect in substituting power for precaution, prudence and foresight. Many things are within the reasonable power of a carrier, which the utmost timidity would never think of employing, till some experience had indicated their necessity. Moreover, the rule of utmost prudence applies only to those means and instruments employed in active and actual transportation, such as cars, &c.

4. Instructions were wrong in assuming that by informing passengers verbally, or by signs, where the steamboat was, and the way to it, made the defendants liable as common carriers of passengers to the end of the wharf; also, in leaving to the jury to decide what was the legal relation of the wharf to the railroad as a part of their route; also, in that it implied that the carriage of baggage to the steamboat evidenced the extent of their liability to carry passengers, and that the duty of defendants, as carriers of passengers, was coextensive with their obligation as to the baggage.

Counsel cited *Schopman* v. *Boston & Wor. R. R. Co.*, 9 Cush., 24; *Sprague* v. *Smith*, 29 Vt., 421; *Hood* v. *N. Y. & N. Haven R. R. Co.*, 22 Conn., 1; *Naugatuck R. R. Co.* v. *Waterbury Button Co.*, 24 Conn., 468; *Farmers' & Mech. Bank* v. *Champlain T. Co.*, 18 Vt., 140; *Straiton* v. *N. Y. & New Haven Railroad Co.*, 2 E. D. Smith, 184; *Norway P. Co.* v. *B. & M. R. R. Co.*, 1 Gray, 263; *Nutting* v. *Conn. Riv. R. R. Co.*, 1 Gray, 502; 2 Redf. on Railways, (3d Ed.,) 227, 228; *Ackley* v. *Kellogg*, 8 Cow., 223; *Van Santvoon* v. *St. John*, 6 Hill, 158.

*Jewett*, for the plaintiff.

APPLETON, C. J. — This was an action on the case against the defendants for negligence.

It appeared in evidence, from the plaintiff, that she, on the 10th Aug., 1866, purchased at Lawrence, Mass., a through ticket from that place to Belfast in this State, for which she paid four dollars; that the ticket so purchased was on one piece of paper, but creased for three different tickets; that one part of the ticket was taken by the conductor on the Boston & Maine Railroad, soon after she entered the cars at Lawrence; that a second part was taken at South Berwick by the conductor of the defendant corporation, and the third part on board the steamer, between Portland and Belfast; that she arrived about 11 o'clock at night at the defendants' depot at Portland, where the cars stopped; that she left the cars there to walk to the steamboat Regulator, which lay at the end of a wharf contiguous; that the way to the steamboat was dark; that she proceeded in company with other passengers from the depot to the place of embarkation, without accident, until within, as she judged, from ten to fifteen feet of the edge of the wharf, when, as she was walking along a level surface, without warning of any danger, she stepped her foot into a hole or opening in the planking of the wharf, over which she was passing, and fell backward and fainted; that it was found, on examination, that the small bone of her right leg had been fractured and her right ankle sprained and lamed and that her back and side were wrenched and lamed; that it was a considerable distance from where the passengers left the cars to the place where they go on board the boat; that she heard no directions nor instructions by any officer of the railroad or steamboat about getting from the cars to the boat, nor saw any one to guide her, and that no one accompanied her with a light; and that she had been over this route twice before.

It was admitted that an arrangement, for the sale of through tickets and division of the price, existed between the steamboat and railroad companies, over which the plaintiff passed, and that the baggage of passengers was checked through;

and that the wharf from which the steamboat sailed and on which the plaintiff was when injured, was the property of the defendant corporation.

It was in evidence that the distance from the place where the cars stopped in the depot, at Portland, to the steamboat, was about forty rods, and that the defendants had a side track running from their main track, near the depot, to within six or eight feet of the steamboat; that, until within four or five years, passenger cars had been run down this side track to the steamboat; but that, since that time, the use of the side track for passenger cars had been discontinued; and that it was still and had constantly been used for running freight and baggage cars to the steamboat.

The defendants introduced evidence tending to show that, at the entrance to the steamboat wharf was a guide-board, or sign, indicating the way to the steamboat.

There was evidence introduced tending to show that the wharf was in good condition and that it was amply lighted, and evidence to the contrary.

(1.) The through tickets in the form of coupons, purchased at Lawrence, entitled the plaintiff to pass over the defendants' road. They are to be regarded as distinct tickets for each road, sold by the first company as agents for the other companies. The rights and liabilities of the parties are the same as if the purchase had been made of the defendants at their station. *Schopman* v. *Boston & Worcester R. R. Co.*, 9 Cush., 24; *Sprague* v. *Smith*, 29 Vermont, 421; *Hood* v. *N. Y. & N. H. R. R. Co.*, 22 Conn., 1; 2 Redfield on Railroads, § 185. But railroads may so issue their tickets and so conduct as to have the purchasers understand that they undertake for the whole route, in which case they will be held responsible to that extent. *Quimby* v. *Vanderbilt*, 17 N. Y., A., 306; *Blake* v. *G. W. R. Co.*, 7 Hurls. & Nor., 987.

(2.) The degree of care and caution required of the carriers of passengers was correctly stated by the presiding Justice and in accordance with the authorities. The care to

be used depends somewhat upon the value and importance of what is to be carried. The greater the value to be transported, the greater the need of care and caution on the part of the carrier. If the business is of the highest moment, then the skill, care and diligence should be in proportion thereto. In *Ford* v. *London & S. W. Railway Co.*, 2 F. & F., 732, Mr. Chief Justice ERLE uses the following language :—" The action is grounded on negligence. The railway company is bound to take reasonable care, to use the best precautions in known practical use for securing the safety and convenience of passengers." In *Philadelphia & Reading Railroad Co.* v. *Derby*, 14 Howard, 486, Mr. Justice GRIER remarks as follows :—" When carriers undertake to convey passengers by the powerful and dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence." The question came before this Court, in *Edwards* v. *Lord*, 49 Maine, 279, and the instructions given in this case will be found in accordance with the views of the Court as there expressed.

(3.) The depot and the grounds around the depot belonging to the defendant corporation, and used in connection therewith, should be in safe condition for those who, in the course of travel, are obliged to pass over them. The defendants own the wharf. It is in their use for the purpose of their business as carriers. The cars containing the baggage for the steamboat, with which the defendant corporation is connected, pass over it. The cars, with passengers for the steamboat, formerly passed over it, though they are now discontinued. The wharf is used by the railroad and in connection with the boat. The passengers for the boat pass over it on their way to the boat. It is the way provided. It is the way passengers in the cars are directed to take. The train arrives in the evening. Passengers from the cars to the boat pass rapidly over the intervening distance. The wharf should be lighted. The servants of the defendant corporation should be in readiness to point out the way. The wharf should be safe. The defendants should

be justly held responsible for any neglect of their servants, or for any deficiencies in the wharf, which, with due care, might be avoided. If the defendants had carried the plaintiff over the wharf, as heretofore, in their cars, and she had been injured in consequence of the neglect of the defendants, she would have been entitled to recover. Her rights are none the less because she walks over the wharf to reach the steamboat, than if she had been borne over it, if, on the way, she is injured through the negligence of the defendants by leaving the wharf in an unsafe and dangerous condition. The defendants are not released from liability because, for their convenience, she used her own limbs, when she might be entitled to the use of their cars. Their liability did not cease the moment the cars reached the depot. It continued, equally as if at the depot, while she was on her way over the defendants' wharf, and, by their direction, to the steamboat, and until, in the ordinary course of her passage, she should reach the point where the liability of the steamboat company commences. The passage contracted for was from Lawrence to Belfast. The plaintiff was *in itinere* from the point of departure to the destined point of arrival. The defendants must, at any rate, be deemed liable from the place where they received the passenger to the place where she was to be transferred to the next agent in the course of transmission to the place of her destination.

These views seem to be in accordance with the general principles of law established in similar cases. The proprietors of a railroad, as passenger carriers, are bound to the most exact care and diligence, not only in the management of their trains and cars, but also in the structure and care of their track, and in all subsidiary arrangements necessary to the safety of passengers. *McElroy* v. *The Nashua & Lowell Railroad Company*, 4 Cush., 400. Assuredly, a safe passage-way to and from the cars is a subsidiary arrangement which passengers have a right to require to be safe. The wharf was this passage-way for those going to the boat from the cars or coming to the cars from the boat. A

railway company, for the more convenient access of passengers between the two platforms of a station, erected across the line a wooden bridge, which the jury found to be dangerous; held, that the company were liable for the death of the passenger, through the faulty construction of this bridge, although there was a safer one about one hundred yards further round, which the deceased might have used. *Longmore* v. *G. W. Railway Co.*, 115 E. C. L., 183. In *Nicholson* v. *L. & Y. Railway Co.*, 3 Hurlstone & Coltman, 534, the plaintiff sued the defendants, common carriers, for not sufficiently lighting their depot, and for not providing proper and sufficient accommodation for their passengers to depart safely from their station after their arrival, and for leaving hampers in the way of passengers departing, over which the plaintiff falling was injured. The facts were these. The plaintiff, a passenger by the defendants' railway, was set down at T., after dark, on the side of the line opposite to the station and the place of egress. The train was detained more than ten minutes at T. and, from its length, blocked up the ordinary crossing to the station which is on the level. The ticket collector stood near the crossing with a light, telling passengers to "pass on." The plaintiff passed down the train, to pass behind it, and, from the want of light, stumbled over some hampers put out of the train, and was injured. The practice of passengers had been to cross behind the train, when long, without interference from the railway company:—Held, that these facts disclosed evidence for the jury of negligence on the part of the company. In *Martin* v. *The Great N. Railway Co.*, 30 E. L. & Eq., 473, the defendants, sued as common carriers, were held liable for so negligently managing and lighting their station, that the plaintiff, being a passenger by the railway, was thrown down, while on his way to the carriages. In *Murch* v. *Concord Railroad Corporation*, 29 N. H., 9, it was held that the owners of railroads, which are public highways, are bound to make such landings and places of access to their roads, as are necessary for the public accommodation,

and to keep them in a suitable and safe state for the accommodation of persons who may reasonably be expected to use them.   In *Penn. Railroad Co.* v. *Henderson*, 51 Penn., (1 Smith,) 315, the railroad corporation was held liable, as common carriers, for an injury occasioned by not having a safe and convenient platform, the Court terming the want of such platform "an imperfection or defect in the road." So the ferryman is bound to have his landing in a complete state of repair for the reception of travellers, and to furnish proper easements for entering the boat, and to provide fastenings to keep the boat in a firm and steady position while passengers are being received.   *Cohen* v. *Hume*, 1 McCord, (S. C.,) 439.

Indeed, natural persons, who assume no public duties, are held liable, if they suffer their property to remain in a condition dangerous to the public.   *Elliot* v. *Pray*, 10 Allen, 378.   In *Corby* v. *Hill*, 93 E. C. L., 556, the defendant was held liable in tort for negligently placing and leaving an obstruction in the private avenue, known to be used in the ordinary way, whereby a passer lawfully using it, though having no permanent right of way, was injured.   In *Packard* v. *Smith*, 100 E. C. L., 468, the refreshment rooms and a coal cellar at a railway station were let by the company to one S, the opening for putting in coals being on the arrival platform.   A train coming in while the servants of a coal merchant were shooting coals into the cellar for S, the plaintiff, a passenger, whilst passing in the usual way out of the station, without fault of his own, fell into the cellar opening, which the coal merchant's servants had left insufficiently guarded; — Held, that S, the occupier of the refreshment rooms and cellar, was responsible for this negligence.   Much more is it the duty of railway companies to the public, using their railway, to keep the approaches thereto safe and free from obstruction at all points where freight or passengers are received.   1 Redfield on Railroads, 144. So a railway company is bound to fence the station, that the public may not be misled, by seeing a place unfenced, into

Knight *v.* Portland, Saco & Portsmouth Railroad Co.

injuring themselves by passing that way, being the shortest to the station. *Burgess* v. *The Great N. W. Railway Co.*, 95 E. C. L., 923.

5. The damages assessed by the jury are large. Different individuals would vary in their estimate of what would be a just pecuniary compensation for bodily pain and suffering. "It is one thing," observes Mr. Justice Story, in *Thurston* v. *Martin*, 1 Mason, 197, "for a Court to administer its own measure of damages in a case properly before it, and quite another thing to set aside the verdict of the jury because it exceeds that measure." The damages given are not so excessive as to require or justify our interference.

6. Under instructions of the presiding Justice, deemed unexceptionable, the jury have found the defendants guilty of negligence. The question was one properly for their determination. The law makes them judges of fact. It is not enough for the Court to be satisfied that they should have come to a different conclusion, to authorize it to be set aside. As was remarked by Erle, C. J., in *Longmore* v. *G. W. Railway Co.*, 115 E. C. L., 183 in reference to the safety of a bridge,—"I think the Judge clearly would not have been justified in taking upon himself as matter of law to determine as to the propriety of its construction, and withdrew that question from the jury." So too, in the same case, Keating, J., says,—"No doubt, the jury might, if so minded, have found that there was no negligence on the part of the company. And it certainly seemed to me there was a strong case for the company." Yet the verdict was sustained. There is no such proof of misconduct, that imperatively demands the verdict to be set aside. The law has made the jury the judges, to determine whether the defendants have been negligent or not, and to their determination the defendants must submit.

*Exceptions and motion overruled.*

Kent, Walton, Barrows and Danforth, JJ., concurred.