# Montgomery & Eufaula Railway Co. v. Thompson.

*Action against Railroad Companies, for Personal Injuries.*

1. *Struck jury.*—Under the statute giving "either party," in a civil action, the right to demand a struck jury (Code, § 3018), all the persons litigant on one side, whether as plaintiffs or as defendants, are regarded as one party; and where there are several defendants, having different defenses, the right of the plaintiff to a struck jury can not be defeated, because they can not agree among themselves as to the names to be struck off, but the court may, in such case, allow each defendant to strike off a name in rotation.

2. *Injuries caused by traps and pitfalls; liability of owner for damages.* All persons, whether natural or artificial, who own lands on which the public is invited, expressly or impliedly, to enter, are bound to keep such lands free from traps and pitfalls, and are liable in damages at the suit of any person injured by the neglect of this duty; but the principle does not extend to places which are strictly private, or to which the public is neither invited nor expected to go.

3. *Same, as applied to railroad companies.*—All the property of a railroad company, including its depots and adjacent yards and grounds, is its private property, on which no one is invited, or can claim a right to enter, except those persons who have business with the railroad; which class embraces, not only passengers, but protectors and friends attendant on their departure, or awaiting their arrival.

4. *Same.*—To the class of persons thus having business, the railroad company is under obligation to keep in safe condition all parts of its platforms, with the approaches thereto, to which the public do, or would naturally resort, and all portions of the station-grounds reasonably near to the platform, where passengers would be likely to go, and to provide safe waiting-rooms, and to keep the depot and platform well lighted at night; but, to the public at large, the company owes "nothing beyond the observance of the duties of good neighborhood," which includes " the universal duty of doing no willful or wanton injury, and of not erecting or continuing, on or near its platform or approaches, to which the public may be expected to go, any nuisance, trap, or pitfall, from which personal injury is likely to ensue."

5. *Contributory negligence as defense.*—To an action against a railroad company, to recover damages on account of personal injuries sustained from a neglect of this duty [to keep its depot grounds and approaches in safe condition], contributory negligence on the part of the plaintiff himself is a complete defense.

Vol. lxxvii.

[Montgomery & Eufaula Railway Co. v. Thompson.]

6. *Liability of owners and lessees of railroad.*—The building in the city of Montgomery known as the "Union Depot," with the yard or grounds annexed, is the property of the two railroad companies known as the South and North Alabama, and the Louisville and Nashville; but the Montgomery and Eufaula railroad company, having acquired by lease, at a stipulated rent, the right to use the property in common with them, for the arrival and departure of its trains, with the use of its waiting rooms, ticket-office, baggage-room, &c., is liable to passengers and the public generally, in relation to the property, as if it were the owner in fee.

7. *Application of these principles to case at bar.*—The plaintiff in this case came to Montgomery on the Montgomery and Eufaula railroad, and, on alighting from the train at the Union Depot, desiring to find a privy, made inquiry of a stranger, who pointed in the direction of a privy erected on the bank of the river, at the further end of the platform, about fifty yards from the depot; and in trying to find it, he wandered beyond it in the dark, fell down the steep bluff, and sustained serious injuries. The railroad platform was well lighted, and extended from the depot to the river; but there was no light at the privy, and a house intervened between it and the lights on the platform. *Held*, on these facts, that the plaintiff had no cause of action against the railroad companies who owned the property, as to them being a mere stranger; and that he could not recover against the Montgomery and Eufaula corporation, lessees of the property, because, being acquainted with the locality, he was guilty of contributory negligence in attempting to find the privy without further inquiry.

8. *Duty of railroads to provide privy accommodations.*—By statute enacted since the occurrence of the injury in this case, it is made the duty of railroad companies to provide privy accommodations at depots and stations, when required to do so by the Railroad Commission (Sess. Acts 1882-3, p. 154); and this may be regarded as "a legislative intimation that, theretofore, the duty was at least doubtful."

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by T. B. Thompson, against the Montgomery & Eufaula Railway Company, the South & North Alabama Railroad Company, and the Louisville & Nashville Railroad Company, to recover damages for personal injuries sustained by plaintiff on the night of February 1st, 1883, by falling down the steep bluff of the river near the Union depot, at the foot of Commerce street in the city of Montgomery; and was commenced on the 21st May, 1883. The original complaint contained but a single count, which alleged that on said February 1st, 1883, the defendants " were using and occupying a certain piece of property in the city of Montgomery, at the foot of Commerce street, known as the 'Union Depot,' being the place at which passengers travelling to and from said city of Montgomery, upon the trains running on the roads operated by said railroad companies respectively, got on and off the cars ; and that it was the duty of said defendants to keep the platforms of said depot, and the approaches thereto (to which passengers, going off or getting from the trains of said roads, do or would naturally resort), and all portions of the

29

[Montgomery & Eufaula Railway Co. v. Thompson.]

grounds reasonably near to said depot, where passengers coming in, or those who have purchased tickets for the purpose of going on their cars, would naturally or ordinarily be likely to go, in a safe condition for such passengers and persons to pass over and upon ; but said defendants, in violation of their said duty, wrongfully, negligently and carelessly suffered a high, steep, and precipitous bank, beginning at a portion of said station grounds, reasonably near the platforms of said depot, and where passengers going on and getting off their trains would naturally or ordinarily be likely to go, to remain open, and without any railings, or other security to prevent passengers from walking over, or falling off the same ;" and that plaintiff, " while lawfully at said depot on said 1st February, 1883, and upon said grounds, as a passenger of said Montgomery & Eufaula Railway Company, in the night-time, without negligence on his part, fell over said embankment, to the edge of the river below, and by such fall was grievously bruised and injured," &c.

A demurrer to the complaint was filed by the Montgomery & Eufaula Railway Company, assigning the following as grounds of demurrer : 1st, because " it owes no duty to the public, as alleged in said complaint, to keep the platforms of the depot, and the approaches thereto, to which the public resort, in a safe condition for persons to pass over ;" 2d, " because it is not alleged that said bank was a place where this defendant's passengers would be likely to go, in going to or getting off its cars, in purchasing tickets to travel on its road, in looking after their baggage, or pursuing other lawful purpose for which a passenger might use its premises ;" 3d, " because it does not allege that this defendant had any control over said bank ;" 4th, " because it does not allege that plaintiff was injured in getting on or off this defendant's cars, or in purchasing a ticket to travel on its road, or in looking after his baggage, or in pursuing any other lawful purpose for which a passenger might use its premises ;" 5th, " because it fails to show that plaintiff received said alleged injuries through any misfeasance or non-feasance of duty due him as a passenger on its road."

A demurrer was also filed by the two other defendants jointly, assigning the following as grounds of demurrer : 1st, because of misjoinder of defendants, no privity being shown between them and their co-defendants ; 2d, because the complaint shows that the plaintiff was not a passenger on the train of either of these defendants ; 3d, because the complaint does not show that the plaintiff, at the time of the accident, had been a passenger on either of their roads, or was about to become a passenger, or was about the depot for that purpose ; 4th, because the facts stated do not show that either of them

[Montgomery & Eufaula Railway Co. v. Thompson.]

owed the plaintiff any duty whatever at the time he received the alleged injuries ; 5th, because the facts stated do not show that plaintiff was lawfully at the place where he received the alleged injuries ; 6th, because the complaint shows that the alleged injuries were not received at the depot of these defendants, or at any of the approaches to their depot or platform ; 7th, because there is no duty devolving upon these defendants, or either of them, to maintain or keep in order a platform, or approaches thereto, or any place of resort, for the benefit of the public.

The court sustained the demurrer of the M. & E. Railway Company, on the first ground assigned, but overruled it as to all the others ; and also sustained the demurrer of the other defendants, on the last ground assigned, overruling all the others. The plaintiff then amended his complaint, by adding an additional count, which alleged, in addition to the facts averred in the original complaint, that the defendants, " in violation of their said duty, wrongfully, negligently and carelessly suffered a high, steep and precipitous bank, beginning at a portion of said station grounds reasonably near to the platforms of said depot, and running along said grounds to a point thereon where there was situated a privy, or water-closet, where passengers going on or getting off said trains would ordinarily or naturally be likely to go, and to which such passengers were in the habit of going for the purpose for which such places are intended and used, and to reach which they would ordinarily and likely pass along said embankment, to remain open, and without any railing,. or other security to prevent such passengers from walking over, or falling off the same, and also suffered the same to remain without lights, or other means of discovering or marking- the same, so that said embankment might be seen by passengers resorting to such water-closet ; " that plaintiff, on said 1st February, 1883, being lawfully at said depot and on said grounds in the night-time, as a passenger on the trains of said M. & E. Railway Company, " and having necessity to resort to said privy, or water-closet, so used by passengers, said embankment being unprotected by any railing, and there being no light or other means of marking the same, at a point near said privy fell over said embankment," &c., and sustained grievous injuries. To this amended complaint the defendants assigned the same causes of demurrer as to the original, but the court overruled each of the demurrers. The defendants then each pleaded, in short by consent, not guilty, and contributory negligence on the part of the plaintiff ; and the cause was tried on issue joined on these pleas. A special plea was also interposed by the Louisville & Nashville, and the South & North Alabama railroad companies, alleging that the privy was situa-

ted on their private premises, seventy-five yards distant from the depot and approaches thereto, and where neither passengers nor other persons were invited or accustomed to go ; and that the plaintiff, while intoxicated, negligently and carelessly wandered from the street and the usual route to and from the depot, and fell over the bluff of the river, which was the boundary of the defendants' private property at that point.   To this special plea the court sustained a demurrer.

On the trial, as the bill of exceptions shows, the plaintiff having demanded a struck jury, the Louisville & Nashville Railroad Company and the South & North Alabama Railroad Company " objected to a struck jury, on the ground that there were three several defendants, two of whom were making a different defense from the third ;" but the court overruled their objection, and they excepted.   The same objection was interposed by the M. & E. Railway Company, and an exception duly reserved to the overruling of the objection.   " Thereupon, the court ordered the parties to proceed with the selection of a jury, and the plaintiffs, being ordered to strike one juror from the list, did so ; and the defendants being then ordered to strike one from the list, the attorney for the M. & E. Railway Company stated to the court, that he was unable to agree with the attorney representing the other defendants, as to what juror should be stricken from the list; but the court ruled that there was really only one ' party defendant,' and that the three defendants must agree; and they being unable to agree, the court directed the attorney for the M. & E. Railway Company to strike one name from the list, and said attorney did so;" to which ruling and action the other defendants excepted.   The plaintiff then struck another name from the list, and the attorney for the L. & N. and the South & North Alabama corporations was then directed to strike one name from the list; and this process was repeated until only twelve names remained on the list—the plaintiff striking one name from the list, and the M. & E. Railway Company and the defendants alternately striking another.

The bill of exceptions purports to set out all the evidence adduced on the trial; but the material facts, as to the ownership, location and use of the defendant's property, and the circumstances attending the accident by which the plaintiff was injured, being fully stated in the opinion of the court, no further statement is necessary.   On all the evidence, the defendants requested the court, jointly and severally, to charge the jury, that if they believed the evidence, the plaintiff was not entitled to recover against any one or all of them ; and they excepted, jointly and severally, to the refusal of these charges. Sixteen other special charges were requested by the defendants,

[Montgomery & Eufaula Railway Co. v. Thompson.]

asserting their non-liability, on facts hypothetically stated, applicable to the different phases of the case; and exceptions were duly reserved to the refusal of each of these charges.

The court charged the jury, *ex mero motu*, as follows: "If the Montgomery & Eufaula Railway Company used the Union Depot for the purpose of receiving on board of its trains and discharging therefrom its passengers in the city of Montgomery, and that was the common depot for three or four roads, and was its regular and known place for thus receiving and discharging its passengers; then it was the duty of said railway company to have there provided a privy, or water-closet, for the accommodation of such passengers; and this duty exists, although said railway company might only be the lessee of said depot, and only to the extent of entering its trains on said depot grounds, for the purpose of receiving and discharging passengers on and from its trains; so that the mere fact that said railway company was only such lessee, if such be the fact, would not avoid the duty of providing such privy or water-closet. Hence, upon this point, said M. & E. Railway Company can not escape liability, if the jury find the fact to be that said depot was such point of receiving and putting off its passengers; and if the other defendants used and occupied said depot for the purpose of taking in and putting off their passengers, it was their duty to provide a privy, or water-closet, for the use of their passengers." The M. & E. Railway Company duly excepted to that portion of this charge which asserted its liability on the facts stated, and the other defendants excepted to the last clause, which asserted their liability.

The court charged the jury, also, on the request of the plaintiff, as follows: (1.) "Although the jury may believe, from the evidence, that the plaintiff was intoxicated at the time of the accident; yet, if they believe that his intoxication was not of such character as to render him incapable of taking care of himself, then the fact of such intoxication does not necessarily constitute negligence, but is only evidence to which the jury may look in determining whether he was guilty of negligence which contributed to his injury." (2.) "Although the jury may believe that the accident occurred at a point not on the direct route from the depot to the privy, yet, if they believe it occurred at a point to which one seeking such privy in the night-time, with ordinary care, would be liable to go, and that such point was not properly guarded against, then the fact that it was not on the direct route is no defense to the action." To each of these charges the defendants severally excepted.

All of the defendants appeal, and all assign errors, jointly and severally; the assignments of error embracing the adverse rulings of the court on the pleadings, and in the selection and

organization of the jury, the charges given, and the refusal of the several charges asked.

THOS. G. JONES, and J. M. FALKNER, for the Louisville & Nashville Railroad Company and the South & North Alabama Railroad Company; and ARRINGTON & GRAHAM, for the Montgomery & Eufaula Railway Company, made the following points: (1.) There is a misjoinder of defendants, on the pleadings and proof. There is no privity between the several defendants - no joint obligation arising out of contract; no joint duty, express or implied, and no joint act or breach of duty. (2.) A railroad company is under no duty or obligation to furnish privies at stations for the use of passengers, unless imposed by statute; and the statute enacted since the occurrence of the injury in this case, giving authority to the Railroad Commission to require the erection of such accommodations, is a legislative expression against the existence of the obligation. A sudden call of nature is a species of sickness, against which a railroad company, or other carrier, is no more bound to make provision for its passengers, than against any other kind of sickness. The regulation of privies and water-closets, especially in large towns and cities, is matter of police and sanitary regulation, and involves considerations of climate, sewerage, local facilities, &c.; and neither the necessities of the travelling public, nor the customs of this country, have hitherto required of common carriers that they shall provide such accommodations at their stations. (3.) The duty and the obligation of the M. & E. Railway Company to the plaintiff, as its passenger, terminated when he was landed safely on its platform at Montgomery, his destination, with convenient exit to the streets of the city.—*Zebe v. Railroad Co.*, 33 Penn. St. 318; *Imhoff v. Railroad Co.*, 20 Wisc. 363; *Central R. R. Co. v. Coleman*, 28 Mich. 441; *Frost v. Gr. Tr. R. R. Co.*, 10 Allen, 338; *Forsyth v. B. & A. Railroad Co.*, 103 Mass. 511. As to the other defendants, the plaintiff never occupied towards either of them the relation of a passenger; and they were under no more duty or obligation to him than to any other person, or to the public generally. (4.) The rigid rules for the protection of the passenger, after he has commenced his journey, and put himself in the custody of the carrier, have no application to other persons who, by invitation or permission, may come upon the private grounds of the carrier. A carrier's liability "in respect to the condition of his property, is neither greater nor less than that of any private person to another who, by invitation or inducement, express or implied, has come upon his premises for the purpose of transacting business."— *Welfare v. London Railroad Co.*, L. R. 4 Q. B. 693: *Railroad Co. v. Bingham*, 29 Ohio St. 374; *Ind.*

[Montgomery & Eufaula Railway Co. v. Thompson.]

*Railroad Co. v. Hudelson*, 13 Ind. 325; *Crofter v. Met. Railway*, L. R. 1 C. P. 300; *Toomey v. Railway Co.*, 3 C. B. (N. S.) 146; *Railroad Co. v. Godfrey*, 71 Ill. 500; *Gillis v. Penn. Railroad Co.*, 59 Penn. St. 129. An entry may be excusable as a trespass, and yet not a matter of right.—*Knight v. Abert*, 6 Penn. St. 472. A person who enters by sufferance, or under an implied license, can not recover for injuries caused by obstructions or pitfalls, but takes the risk.—29 Ohio St. 364; 10 Allen, 372; 41 N. Y. 525; 66 N. Y. 249; 59 Penn. St. 141; 10 Metc. 371; 126 Mass. 377; 44 Geo. 251. (5.) The evidence shows that the plaintiff himself was guilty of negligence, and this bars any recovery.—*Railroad Co. v. Copeland*, 61 Ala. 376; *Railroad Co. v Letcher*, 69 Ala. 106. (6.) The rulings of the court in the organization of the jury were erroneous. The defendants had different defenses, and could not make common cause.—59 Geo. 83; 37 Mich. 495; 2 La. Ann. 892.

TROY & TOMPKINS, *contra.*—(1.) There exists a common-law duty, on the part of a railroad company, to provide safe and reasonable accommodations at their stations, for all persons who may go there on legitimate business; and an action lies for injuries sustained by a breach of this duty. The duty extends to the stations, platforms, approaches thereto, and all other parts of their grounds to which persons are invited, expressly or by implication, to come for any lawful purpose. *McDonald v. C. & N. W. Railroad Co.*, 26 Iowa, 125, and 29 Iowa, 170; *Railroad Co. v. Schwindling*, 8 Amer. & Eng. R. R. Cases, 550, and cases cited in notes. The plaintiff was not a trespasser, but was lawfully on the premises, and is entitled to the protection of this rule.—*Bennett v. L. & N. Railroad Co.*, 1 Amer. & Eng. R. R. Cases, 71, notes; 102 U. S. 577; *Knight v. Portland*, 56 Maine, 234; *McKone v. M. & C. Railroad Co.*, 13 Amer. & Eng. R. R. Cases, 29; *Stewart v. Railroad Co.*, 2 Ib. 497; *Logan v. Railroad Co.*, 73 Mo. 392; *Tobin v. Railroad Co.*, 59 Maine, 183; *Wright v. L. & N. W. Railway Co.*, L. R., 10 Q. B. 298; *Corby v. Hill*, 4 Scott, C. B. (N. S.) 562; *Chapman v. Rothwell*, El., Bl. & El. 168. (2.) The plaintiff was not guilty of any contributory negligence. Shear. & Redf. Negl. § 32; *Alger v. Lowell*, 3 Allen, 402; *Robinson v. Pioche*, 5 Cal. 460; *Indermaur v. Dames*, L. R., 1 C. P. 288. (3.) The right to a special jury is given by statute, and plaintiff could not be deprived of it by any disagreement between the several defendants.—Code, § 3018; *Bibb v. Reid & Hoyt*, 3 Ala. 88.

STONE, C. J.—The right to have a struck jury, in a case like the present, is secured by the statute to either party who

demands it.—Code of 1876, § 3018. In the purview of this statute, there are but two parties, the plaintiff and the defendant. The statute has made no express provision for cases where there are more plaintiffs, or more defendants, than one. Each litigating side is regarded as a suit, no matter how many persons may compose it. The right to have such jury being given by statute, the opposing party can not defeat it, either by divided counsels, or by non-action. The court may, if necessary, compel its observance, or punish its non-observance; and in cases where there are more defendants than one, and the grounds of defense are different, if counsel can not agree on the jurors they would strike, we can conceive of no solution of the difficulty more just and simple, than that adopted by the Circuit Court. To hold otherwise, would be to deny to the plaintiff a clear statutory right, upon a mere technicality.

The depot-building and depot-yard, or grounds annexed, known as the "Union Depot" in Montgomery, are the property of the South and North Alabama and the Louisville and Nashville railroad companies. The Montgomery and Eufaula Railway Company has no interest in the property. It has purchased the common use of said depot property, to the extent that its trains come on the depot-yard for the purpose of receiving and discharging its passengers and their baggage, and receiving and delivering the mails; and it has also the common use of the waiting-rooms, and the ticket and baggage-offices, to the extent they are necessary for the successful running of its passenger-trains. For this use it pays a stipulated rent. Thus using the depot, we do not hesitate to declare that the M. & E. Railway Company rests under the same duties to the public, in relation thereto, as if it owned the property in fee.

There is a common duty resting on all persons, artificial as well as natural, who own real estate on which the public is expressly or impliedly invited to enter, that it shall be kept free from traps and pitfalls; and if this duty be neglected, and injury results therefrom to any person, the person suffering by such trap or pitfall may recover damages for the injury. This is a general rule of society, crystalized into law. It partakes of the nature of a public nuisance done or suffered, which inflicts special injury on an individual. To a suit for such injury, it is no defense that the injury was not intended. Human conduct must be tested by its known general, or ordinary consequences.—*Alger v. City of Lowell*, 3 Allen, 402; *McKone v. Mich. Cen. R. R. Co.*, 13 Amer. & Eng. R. R. Cas. 29; *John v. Bacon*, L. R., 5 C. P. 437; *Indermaur v. Dames*, L. R., 2 C. P. 311; *Smith v. London & St. K. Dock Co.*, L. R., 3 C. P. 326; *McDonald v. Chi. & N. W. R. R. Co.*, 26 Iowa, 124; s. c., 29 *Ib.* 170; *Knight v. P. S. & P. R. R. Co.*, 56

Me. 234; *Bennett v. L. & N. R. R. Co.*, 1 Amer. & Eng. R. R. Cases, 71, and note; *Gillis v. Penn. R. R. Co.*, 59 Penn. St. 129; *Beard v. O. & P. R. R. R. Co.*, 48 Verm. 101.

The foregoing rule, however, does not apply to places strictly private, or where persons are neither expected, nor expressly or impliedly invited to go.—*Howland v. Vincent*, 10 Metc. 371; *Kohn v. Lovett*, 44 Ga. 251; *Knight v. Abert*, 6 Penn. St. 472; *Ind. Cen. Railway Co. v. Hudelson*, 13 Ind. 325.

All the property of a railroad company, including its depots and adjacent yards and grounds, is its private property, on which no one is invited, or can claim the right to enter, save those who have business with the railroad. Under this classification, however, we must include attending friends and protectors, who accompany friends to the train, to aid them in getting on, in procuring tickets, and in checking baggage, and kindred services. The same license is accorded to protecting friends, when the traveller is to leave the train. To persons filling these classes, the railroad corporation owe special obligations of duty, different from those due to the general public. While the former come by invitation, express or implied, the latter are mere pleasure-seekers, or are prompted by curiosity. For the use and comfort of the former class, railway companies are bound to keep in safe condition all portions of their platforms, and approaches thereto, to which the public do or would naturally resort, and all portions of their station-grounds reasonably near to the platform, where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go. Within these boundaries, a defect of structure which is likely to, and does cause injury, or any other trap or pitfall producing a like result, will fasten a liability on the railroad owing the duty. Of similar obligation to this primary class, is the duty to provide safe waiting-rooms, and to keep the depot and platform well-lighted in the night-time.—1 Thompson on Negligence 313, 314, 315; *Stewart v. I. & G. N. R. R. Co.*, 2 Amer. & Eng. R. R. Cas. 497; *St. L., I. M. & S. R. R. Co. v. Cantrell*, 8 *Ib.* 198; *Coleman v. Eastern Counties Railway Co.*, 4 Hurls. & Nor. 781; *Gillis v. Penn. R. R. Co.*, 59 Penn. St. 129; *Mc-Kone v. Mich. Cen. R. R. Co.*, 51 Mich. 601; *Seymour v. C. B. & Q. Railway Co.*, 3 Biss. 43.

The rule of obligation is essentially different, when the asserted rights of mere idlers, or sight-seers, are presented. To such the corporation owes nothing, beyond the observance of the duties of good neighborhood. Among these may be prominently classed the universal duty of doing no willful or wanton injury, and of erecting or continuing on or near its platform or approaches, to which the public may be expected

[Montgomery & Eufaula Railway Co. v. Thompson.]

to go, no nuisance, trap or pitfall, from which personal injury is likely to ensue.—1 Thompson Neg. 318, 314; *B. & O. R. R. Co. v. Schwindling*, 8 Amer. & Eng. R. R. Cas. 544, and note; *Frost v. Gr. Tr. R. R. Co.*, 10 Allen, 387; *Morrissey v. Eastern R. R. Co.*, 126 Mass. 377; *Nicholson v. Erie Railway Co.*, 41 N. Y. 525; *Sutton v. N. Y. Cen. & H. R. R. R. Co.*, 66 N. Y. 243; *Gillis v. Penn. R. R. Co.*, 59 Penn. St. 129; *P. Ft. W. & Chi. Railway Co. v. Bingham*, 29 Ohio St. 364.

There is another important principle, which may exert some influence in this case. If one, who complains of an injury suffered at the hands of another, has, through intention, recklessness, or carelessness—that is, want of ordinary care or attention—contributed proximately to the injury he complains of, this is a full answer to any right he could otherwise maintain on account thereof.—*Memphis & Charleston R. R. Co. v. Copeland* 61 Ala. 376; Sh. & Redf. on Neg. § 323; *Forsyth v. B. & A. R. R. Co.*, 103 Mass. 510; *Seymour v. Chi. O. & Q. Railway Co.*, 3 Biss. 43; *Frost v. Gr. Tr. R. R. Co.*, 10 Allen, 387. In the case of *Forsyth v. B. & A. R. R. Co.*, *supra*, it appeared that the plaintiff, a passenger, alighted from defendant's cars at night, at a station, on one of two platforms extending along each side of the track to a highway (which, as the plaintiff knew, crossed the railroad), and having a step at the end next the highway; and that, instead of walking along the platform, he voluntarily stepped from it, with the intention of going obliquely across the track to the highway, and, in stepping off, he fell into a cattle-guard which had been dug across the track, and was injured; that the night being very dark, he felt with his feet to find the edge of the platform, but did nothing to ascertain what would be found on stepping from the platform. *Held*, that he was not in the exercise of due care, and could not recover.

The proof in this case shows the following facts, upon which there is no controversy: The Union [passenger] Depot is at the foot of Commerce street, and is approached alone from that street. The end of its platform rests on Commerce street about one hundred feet, pointing up the river, and it extends back, down the river, about two hundred feet. On the side of the platform farthest from the depot runs the Alabama river, with a precipitous, bluff bank. The ticket-office, waiting and baggage-rooms are on the side farthest from the river, and the platform is kept well lighted, in the night-time. No complaint is urged that the platform and its approaches were not in good order and well lighted. The plaintiff was acquainted with the locality. The track on which the Montgomery and Eufaula Railway Company received and discharged its passen-

[Montgomery & Eufaula Railway Co. v. Thompson.]

gers was nearest the depot-building, and farthest from the river. The plaintiff came in on the M. & E. railroad train, after night-fall, and left the train at the depot, without injury or complaint. As we have said, there was no controversy up to this point. The testimony of the plaintiff, not contradicted, is, that soon after leaving the train, he had occasion to seek a retired spot, and inquired of a person whom he did not know, if he knew where there was a privy. He made no other inquiry. The person inquired of pointed in a direction diago-nally across the platform, towards the river side of the lower end of the platform, and told him there was one there. He went in search of it, missed the place, wandered into the dark beyond and below the platform as much as fifty feet or more, and fell over the bluff, suffering very serious injury by the fall. This is the *gravamen* of the present suit. There is proof that there was a privy in the direction indicated, but it was without a light, and was hidden from the light of the platform by an intervening house.

It is manifest, if there is any fault any where growing out of these facts, it is a mere non-feasance, without any of the elements which constitute a trap or pitfall. This, in a proper case, will fix a liability on the railroad, whose passenger is thus injured. It can extend no farther. No other railroad company owed the plaintiff any active duty, and hence could commit no tort in failing to do what it was under no obligation to do. There is no ground of recovery against either the South and North Alabama Railroad Company, or the Louisville and Nashville Railroad Company. As to them, plaintiff was a mere stranger or intruder.

It is contended for appellee, that it was the duty of the Montgomery and Eufaula Railway Company, whose passenger he was, to provide such accommodations for its customers; and the fact that none such was visible, lighted, or could be found, renders that road liable for the injury suffered in searching for it. It may be that, in cities and towns, such provision should be made for the travelling public, getting on and off trains. Such retreats, however, are not usually placed in public places, or lighted, except within inclosures, such as public hotels, cars &c. Too great publicity would stamp them somewhat with the character of a nuisance. It is now made the duty of railroad companies to provide such accommodations, whenever thereto required by order of the Railroad Commission.—Act approved February 23d, 1883.—Sess. Acts 154. This statute was enacted after the occurrence of the injury complained of in this suit, and may be treated as a legislative intimation, that, theretofore, the duty was at least doubtful. Counsel have made diligent search for authorities bearing directly on this

question, and have found none. Their very careful and able briefs prove this. We ourselves have found no unerring guide for our pathway. We are, therefore, led to infer the present case is one of first impression. *Toomey v. London, B. & S. C. Railway Co.* (3 Common Bench, 146), and *McKone v. Mich. Cen. R. R. Co.* (51 Mich. 601), come nearest to the question, of any cases shown to us; but each of those cases went off on the doctrine of traps and pitfalls on grounds adjacent to the depot, where passengers would be likely to go. A remark, in the case of Toomey, *supra*, by Sir Edward Vaughan Williams, one of the justices—leading auther of the great work on Executors and Administrators—shows that in England, as well as in this country, juries need to be cautioned, when charged with inquiry of damages against railroads, or other supposed wealthy corporations. Speaking of slight and shadowy testimony of negligence, on which plaintiff claimed the right to proceed before the jury (he had been non-suited), that learned jurist said : "Every person who has had any experience in courts of justice knows very well, that a case of this sort against a railway company could only be submitted to a jury with one result."

The precise question in this case is, not that no such accommodation had been furnished, but that it was not sufficiently lighted, or made visible, so that a passenger could, without danger, find it. We think the plaintiff has disarmed himself of the right to raise this question. Instead of inquiring of some railroad employee, he made inquiry of a mere stranger, and took upon himself the risk of finding the place. This, when, having knowledge of the place, he must have known, if he reflected, that he was near the bluff of the river. To put the question in its mildest form, we think the plaintiff's negligence and inattention contributed proximately, if it did not cause the injury he complains of.— *Welfare v. London & B. Railway Co.*, L. R., 4 Q. B. 693; *Crofter v. Met. Railway Co.*, L. R., 1 Com. Pl. 300.

We have not considered the question of the railroad's duty to provide such accommodation prior to, and independent of our statute on the subject. Be that as it may, that enactment has imposed the duty on the railroads, when thereto required by order of the Railroad Commission, and only when so required. Nor have we inquired whether plaintiff's rights as passenger had ceased, when he was safely discharged from the train.—Schouler on Bailments, 649 ; Thompson on Carriers of Passengers, 412 *et seq.* Upon these questions we decide nothing.

On the undisputed testimony in this case, the railroad com-

[Sawyers v. Baker.]

pany was under no obligation to place a fence or guard at the bluff of the river, from which the plaintiff fell.

We need not apply these principles to the several rulings of the Circuit Court, as what we have said will furnish a sufficient guide for another trial.

Reversed and remanded.