CASE 108—ACTION TO RECOVER DAMAGES FOR PERSONAL INJURIES.— OCT. 2.

# Illinois Central R. R. Co. v. Laloge.

APPEAL FROM MUHLENBERG CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

CARRIERS—DUTY TO PROTECT PROPOSED PASSENGER AT STATION FROM ASSAULT—USE OF WAITING ROOM UNREASONABLE TIME BEFORE DEPARTURE OF TRAIN.

Held:  1. Kentucky Statutes, section 784, requiring all railroad companies to open their ticket offices and waiting rooms for passengers at least thirty minutes preceding the schedule time for

the departure of all passenger trains, fixes what is a reasonable time for the carrier to be required to care for passengers before they have taken actual passage, and, therefore, where plaintiff was assaulted in the waiting room of a station about three hours before the schedule time for the departure of the train upon which she proposed to take passage, the company was not liable, in the absence of any contract, express or implied, to accommodate her for a longer time than that fixed by statute.

JONSON & WICKLIFFE and PIRTLE & TRABUE for APPELLANT.

POINTS ARGUED AND AUTHORITIES CITED BY APPELLANT.

1. The evidence relied upon is not to be pleaded.  Section 119, 1 Civil Code.

2. The demurrer ought to have been sustained, because the petition did not show, on its face, that appellee presented herself at a proper time, or under proper circumstances, to demand that she be accepted as a passenger, all of which were necessary before she could charge the carrier.  The carrier had the right, and it was its duty to the public to adopt and enforce reasonable rules.  Elliott on Railroads, vol. 4, sec. 1580, p. 2460; Phillips v. Southern R. R. Co., 445 L. R. A., 163; Webster v. Fitchburg Ry. Co., 24 L. R. A., 524; Dodge v. Boston & B. S. Co., 148 Mass., 209; Hutchison on Carriers, sec. 562; Harris v. Stephens, 73 Am. Dec., 340; Fetter on Carriers, vol. 1, sec. 96, p. 229.

3. To entitle a passenger to protection from assault by fellow passengers or strangers, it must be within the power of the carrier to control the force; the carrier must have knowledge of the danger, or it must arise out of some circumstance of which it is his duty to have knowledge.  Kinney v. R. R., 34 S. W., 1066; Sira v. R. R. Co., 21 S. W., 905; Winnegar's Admr. v. R. R. Co., 85 Ky., 553; Sherly v. Billings, 8 Bush, 147; Hutchison on Carriers, secs. 552, 562.

4. The allegations and proof in the case did not bring her within the rules established by the cases cited and relied upon by her, which were Texas & Pacific R. R. Co. v. Jones, &c., 39 S. W., 124, St. L. & S. W. Ry. Co. v. Griffith, 35 S. W., 741.

Special facts should not be given in charge by the court, nor the attention of the jury called to them.  Flood v. Pragoff, 79 Ky., 607; Commonwealth v. Hourigan, 89 Ky., 305.

R. Y. THOMAS, Jr., ATTORNEY FOR APPELLEE.

The appellee, Elizabeth Laloge, was insulted, assaulted and beaten in defendant's depot at Central City, Ky., and her hus-

band also, by a drunken crowd of hoodlums that appellant's agent had allowed to congregate in the depot passenger waiting room. She and her husband were there waiting for the arrival of a passenger train to go to Paducah. The proof shows that the agent knew her purpose and intention in the waiting room in time to have ejected the crowd and prevented the assault. She was so beaten and injured as to cause her to have a miscarriage. She and her husband were there rightfully, behaving themselves, and the depot was open for the reception of passengers and their presence known to the agent.

### AUTHORITIES CITED.

Florida R. R. Co., v. Hurst, 32 A. R., 17; Webster v. Fitchburg R. R. Co., 58 Am. & Eng. Ency. R. R. Cases, 1; Spannagle v. Chicago & Alton R. R. Co., 31 Ill. App., 460; Norfolk & Western R. R. Co., v. Galligher, 16 S. E. Rep.; Grimes v. Pen. Co., 36 Fed. Rep., 72; Cincinnati R. R. Co., v. Carper, 122 Ind., 26; St. Louis S. W. Ry Co. v. Griffith, 35 S. W. R., 741; T. & P. Ry. Co. v. Jones, 39 S. W. R., 124; Rawson v. Penn. R. R. Co., 8 Am. R., 545; Florida Southern R. R. Co. v. Hirst, 16 L. R. A., 631; I. & G. N. R. R. Co. v. Wilkes, 5 S. W., 491; Curl v. R. R. Co. (Iowa) 16 N. W.. Rep., 69; Winnegar's Admr. v. Central Passenger R. R., 4 S. W., 237; Shirley v. Billings, 8 Bush, 147; L. & N. R. R. Co. v. McEwan; Goddard v. Grand Trunk Ry. Co., 57 Me., 202; Williams v. L. & N. R. R. Co., 32 S. W., 934; T. & P. Ry. Co. v. Best, 18 S. W., 224.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee claims to have been assaulted and insulted by a number of drunken and disorderly persons—loafers—while she was waiting for appellant's station for a train on which she contemplated taking passage over appellant's line of road from Central City to Paducah. She says that she arrived at Central City the morning of the 16th of February, 1900, her husband arriving later in the day. They did not stop at any hotel or other place, it seems, but loitered about appellant's depot at Central City, and at other points in the town, during the day. About 8 o'clock in the evening they went to appellant's depot for the purpose, she says, of waiting for the train upon which she and her husband

intended taking passage. That train was not due till about
1 :05 o'clock the following morning. According to her tes-
timony, she and her husband were in the public waiting
room of appellant's depot after 8 o'clock, when Mr. Nunsz,
appellant's station agent, passed through the room; that her
husband asked him what time the Paducah train would
come along, and whether they would have time to go out
in the town. She says the agent answered that the Pa-
ducah train would not be due till "12 :05 or 1 :05 in the morn-
ing,"—she did not remember which he said. They went
out in the town, and returned about 10 o'clock, or earlier;
that no other notification was given to the company's agent,
or any of them, of appellee's attention or purpose to become
a passenger. She says she and her husband had money
enough to pay their passage to Paducah, but it was taken
from them or lost in the fight that occurred when they were
assaulted about 10 :15 p. m., while still in the depot waiting
room, waiting for the train. She claimed that the boys
who assaulted her and her husband were making a great
deal of noise carousing and swearing. It was not shown
that any agent of appellant knew of this disturbance be-
fore the assault, or that they could have known it by the
exercise of ordinary diligence, except the opinion of appel-
lee expressed, that the noise was loud enough for them to
have heard it in the adjoining room, where a number of
telegraph instruments were at work. The case was submit-
ted to the jury, and a verdict was awarded appellee. Ap-
pellant asked for a peremptory instruction.

This appeal raises, first, the question, What was appel-
lant's duty to appellee? It is argued for her that it was
that duty owed by a common carrier to its passengers;
that she was the passenger of appellant from the time she
entered its depot with the intention to take passage on a

train over a portion of its road. It may be stated that it is not necessary, always, that the person claiming the protection or privileges of a passenger shall have purchased a ticket. Section 558, Hutch. Carr. But at least such person must have a *bona fide* intention of taking a train shortly, to leave the carrier's station at the point where the complainant may be, and have the means at hand with which to pay his passage, and announce to the carrier's agent having such matter in charge, or that such agent shall be notified of, such person's purpose. This must be true because the carrier must have some consideration to support its agreement or obligation to the proposed passenger; this consideration must be either the payment of the fare, which is of itself notice, or the communication of the fact of such purpose to the carrier, that it may know to whom it certainly owes the duties imposed by its contracts, and to whom it may lawfully look for such payment on demand. Section 565, Hutch. Carr. Even this statement must be subject to another qualification: The proposed passenger must present himself at the place appointed by the carrier for receiving such passengers, and within a reasonable time therefor.

By statute in this State it is made the duty of all common carriers to provide waiting rooms for their passengers. These rooms must of necessity be open to the public. Generally. the carrier can not know who of those who attend them contemplating taking passage on its trains. Its waiting rooms are in consequence used more or less by persons not authorized. To this latter class the carrier owes no duty save such as it owes to licensees,—that is, to so conduct its business as to not wantonly or purposely or recklessly injure them. To the passenger, whether on its train or at its station, its duty is materially different. It must use

every care to prevent their injury, and if it has notice of its passenger being in danger of violence, or indecent treatment, whether at the hands of a fellow passenger, or another on its premises, or within its control, it must use its best endeavors to protect the passenger. Kinney v. Railroad Co., 99 Ky., 59 (17 R., 1405, 34 S. W., 1066). In Phillips v. Railway Co., 124 N. C., 123, 32 S. E., 388, 45 L. R. A., 163, the plaintiff was ejected from the carrier's waiting room although he had purchased his ticket for passage on one of its trains. The facts were: The train which plaintiff was to take was not due for some five hours after the act complained of. The carrier had a rule to close its waiting room till thirty minutes before the time of departure of each train. The plaintiff was ejected, and, it being a cold night, and he being thinly clad and having no place to go to, contracted a severe cold, and resultant illness. The court held that the rule of the railway company was not an unreasonable one. On the point pertinent to the case in hand, that court said: "A party coming to a railroad station with the intention of taking a defendant's next train becomes, in contemplation of law, a passenger on defendant's road, provided that his coming is within a reasonable time before the time for departure of said train. To constitute him such a passenger, it is not necessary that he should have purchased his ticket, as seems to have been considered by his honor. 1 Fetter, Carr. Pass., section 223. But the purchase of the ticket would probably be considered the highest evidence of his intention. But still it is his coming to the station within a reasonable time before, with the intention to take the next train, that creates the relation of passenger and carrier."

But we have in this State what may be regarded as legislative construction of the length of time that should be con-

sidered reasonable for the carrier to be required to look out for, and safeguard. its passengers before they have taken actual passage. Section 784, Kentucky Statutes: "All companies shall keep their ticket offices open for the sale of tickets at least thirty minutes immediately preceding the schedule time of departure of all passenger trains from every regular passenger depot from which such trains start or at which they regularly stop; and shall open the waiting room for passengers at the same time as the ticket office, and keep it open and comfortably warmed in cold weather, until the train departs." The carrier is not an innkeeper. It can not, in the discharge of its other duties required by the law, be held to furnish accommodation for the entertainment, for an indefinite length of time, of those who contemplate in the future becoming its passengers. It would have been just as reasonable to have held appellant liable for the safety and comfort of appellee at any time, while at its depot from 9 o'clock in the morning of the 16th to 12:30 in the morning of the 17th, as for the time sued for. We do not mean to hold that, if the carrier agrees to accommodate the proposed passenger by a longer time than the statute provides, it would not be liable for any injuries sustained because of its negligence during such time. But in the absence of such agreement, express or implied, we hold that the proposed passenger can not claim the benefit of that relation by coming onto the carrier's premises an unreasonable length of time before the train which he expects to take passage on is due to depart, and that such reasonable time has been fixed by the statute above quoted. It follows that the peremptory instruction asked for by appellant should have been given. In view of the conclusion to which we have arrived, the other errors complained of need not be noticed.

Reversed and remanded for proceedings consistent here-with.

Petition for rehearing by appellee overruled.