FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COMPANY V. AXSEL HAGBLAD.*

FILED DECEMBER 7, 1904.   No. 13,623.

1. Petition: SUFFICIENCY. Petition examined, and *held* not to state a cause of action *ex contractu* against a common carrier, nor a cause of action at common law for the carrier's negligence.

2. ———: PASSENGER. Petition further examined, and *held* not to set forth facts sufficient to constitute the plaintiff a passenger so as to bring him within the provisions of section 3, article I, chapter 72, Compiled Statutes, 1903.

* Rehearing allowed. See opinion, p. 790, *post.*

3. **Carriers: Duties.** A railroad company owes only ordinary care to persons impliedly invited upon its platform who are not passengers.

4. ———: **Passenger.** In order to bring a person within the station house or upon the platform of a railroad station within the protection of the legal duties owing by a common carrier to its passengers, a person intending to become a passenger must go to the station at a reasonable time before the time fixed for the departure of the train upon which he intends to take passage, in a proper manner, and there, either by the purchase of a ticket or in some other manner, indicate to the carrier his intention to take passage and thus place himself in the carrier's charge.

5. **Pleading.** In order to state a cause of action upon the statutory duty of a railroad company to a passenger who has not actually taken passage upon the train, it is necessary that the facts stated show that the person suing is one of the class of persons to whom the remedy is afforded by the statute. To plead that he is a passenger, in a case where the existence of such relation to the carrier is at issue, pleads a mere conclusion of law and is not sufficient.

6. **Passenger.** From the time a passenger, as defined herein, places himself under the charge of the carrier as he begins his journey until he is afforded the opportunity to leave the premises of the carrier at its termination, he is "a passenger being transported," unless by some act not attributable to the carrier the relation ceases.

Error to the district court for. Holt county: William H. Westover, Judge. *Reversed.*

*Benjamin T. White* and *J. B. Sheean*, for plaintiff in error.

*M. F. Harrington* and *A. F. Mullen, contra.*

Letton, C.

This action was brought by Axsel Hagblad, defendant in error, hereinafter styled the plaintiff, against the Fremont, Elkhorn & Missouri Valley Railroad Company, plaintiff in error, hereinafter styled the defendant. Judgment was rendered for the plaintiff below, and the defendant below brings error to this court. The sole error as-

signed is that the trial court erred in overruling the defendant's motion for a judgment on the pleading *non obstante veredicto*. The defendant, by a general demurrer, by seasonable objection to the introduction of evidence upon that ground, by motion for an instruction, and by motion for judgment *non obstante veredicto*, at every stage of the case challeneged the sufficiency of the allegations of the petition to state a cause of action against the defendant. The parts of the petition which are necessary to be set forth, in order to state the question involved, are as follows:

"1. The plaintiff for cause of action alleges that the defendant is a corporation duly organized under the laws of the state of Nebraska, and has been such corporation for ten years last past; that the defendant is a corporation engaged in the railroad business, and for ten years last past it has been a common carrier of passengers for hire upon its railroad, and has owned and operated a line of railroad in the counties of Madison, Antelope and Holt in the state of Nebraska; that Norfolk and Meadow Grove are stations upon the defendant's line of railroad in Madison county where it receives and delivers passengers on and from its trains, and that the defendant on the 28th day of December, 1902, was a common carrier carrying passengers from Norfolk to Meadow Grove, and that the station at Norfolk where such passengers are received is commonly known as Norfolk Junction.

"2. That on the 28th day of December, 1902, the plaintiff purchased from the defendant at Norfolk, Nebraska, a ticket entitling him to a safe passage on the defendant's train from Norfolk to Meadow Grove, and insuring him against injury while a passenger on said train and while a passenger on the defendant's premises at Norfolk; that while plaintiff was standing on the defendant's station platform at Norfolk on the evening of said day, and after he had purchased and paid the defendant for said ticket, and while he was a passenger on the defendant's premises, and while he was waiting for the arrival of the defendant's

train which was to carry him from Norfolk to Meadow Grove, he was struck by an engine and cars run and operated upon the defendant's railroad track at Norfolk, and which train was under the direction and with the knowledge, approval and consent of the defendant. That by being struck by said engine and said cars the plaintiff was thrown down, mangled, bruised and injured, and sustained the following injuries."

It will be observed that the petition does not allege that any act was negligently done. If the action had been brought against an individual for damages occasioned by his negligence which resulted in the injuries complained of, it would be essential to allege that the injuries were occasioned by the negligence of the defendant, either by setting forth facts which would constitute negligence as a matter of law, or by pleading generally that the defendant was negligent in performing or omitting to perform the acts complained of as constituting negligence. *Omaha & R. V. R. Co. v. Wright,* 49 Neb. 456. The allegations of the petition under consideration do not set forth that the act by which the plaintiff was injured was done negligently, and no fact is alleged which constitutes negligence as a matter of law under the common law, nor by statute unless the plaintiff was one of a class embraced under the provisions of section 3, article I, chapter 72, Compiled Statutes, 1903 (Annotated Statutes, 10039), relating to injuries to persons while being transported over railroads in this state. Since the petition was assailed at every stage in the progress of the cause, the pleader will be presumed to have stated his case as fairly to himself as the facts will warrant, and the familiar rule applied that the allegations in the petition and all presumptions arising therefrom will be construed against the pleader, and no presumptions in his favor indulged in. Having these rules in mind, therefore, it will be observed that the only allegations of the petition which show the manner in which the plaintiff was injured are that, while plaintiff was standing on defendant's station platform at

Norfolk on the evening of December 28, 1902, he was struck by an engine and cars run and operated upon the defendant's railroad track, which train was run under the direction and with the knowledge, approval and consent of the defendant. That, by being struck by said engine and cars, the plaintiff was injured. Taking these allegations alone, without the aid of any presumptions, they appear to be somewhat inconsistent. The plaintiff, while standing on the platform, was struck by the engine and cars operated upon the track. The plaintiff stood presumably upon a safe and properly constructed platform, the engine and cars were presumably properly constructed and properly operated, and the track was presumably in good condition for the purpose of its construction. If we accept these facts as true, then, unless the plaintiff was so situated at the time of the accident that, though he was standing upon the platform, his body projected over the track in such manner that properly constructed and operated engine and cars might strike him, no injury could result. This being the case, the inference must be drawn that, presuming that the defendant was operating its trains with due care and caution, the plaintiff placed himself in a position that common knowledge would show to be one of danger. We conclude therefore that the petition fails to disclose any facts which constitute negligence on the part of the defendant as a matter of law irrespective of the statute, and does not state a cause of action if based upon a common law liability of the defendant.

The plaintiff contends that the petition states a good cause of action upon three grounds: First, it states a breach of contract to safely convey the plaintiff from the point where he purchased the ticket to the point of destination; second, it states a cause of action under the statute hereinbefore alluded to; third, it states a cause of action on the ground of negligence, by stating facts which as a matter of law constitute negligence on the part of the defendant.

As to the first contention, we think it clear that this petition is not based upon contract. No promise and no consideration therefor have been alleged. The petition alleges that the plaintiff purchased a ticket. While it is true that a railroad ticket is evidence of a contract between the carrier and the purchaser thereof, still the plea that the plaintiff purchased a ticket for a passage from Norfolk to Meadow Grove, without alleging that the defendant agreed to carry him between these points in consideration of the sum paid, and alleging further a breach of the contract, does not set forth an action *ex contractu.* 15 Ency. Pl. & Pr., p. 1125, and notes.

"There is a class of cases arising out of contract, where, by reason of the contract, the law raises a duty, for the breach of which duty an action on the case may be maintained; and in such cases the contract, being the basis and gravamen of the suit, must be alleged and proved. * * * But when the gist of the action is a breach of duty and not of contract, and the contract is not alleged as the cause of action, and when, from the facts alleged, the law raises the duty by reason of the calling of the defendant—as in case of innkeepers and common carriers—and the breach of duty is solely counted upon, the rules applying to actions *ex delicto* determine the rights of the parties." *Frink v. Potter,* 17 Ill. 406. See also *Wright v. Geer,* 6 Vt. 151; *Bank of Orange v. Brown,* 3 Wend. (N. Y.) 158; *M'Call v. Forsyth,* 4 W. & S. (Pa.) 179.

We conclude therefore that the gist of this action under the allegations of the petition is a breach of duty arising from the obligations imposed by law upon common carriers, and that it is not an action upon the contract of carriage.

We have already considered the third ground upon which the plaintiff asserts the petition is sufficient, and decided that his position as to this is unsound. There remains, however, to be considered the contention that the petition states a cause of action under section 3, article I, chapter 72, Compiled Statutes, 1903 (Annotated

Statutes, 10039), and this presents an important point for consideration. Section 3 is as follows: "Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the person injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." The plaintiff contends that under the allegations of the petition he was a passenger and was injured while being transported over the defendant's railroad, and that since this fact appears upon the face of the petition the liability of the company for damages sustained by him is fixed, unless, by proper pleading and proof as to the plaintiff's criminal negligence or violation of some rule or regulation actually brought to his notice, it relieves itself from the burden and from the conclusive presumption of negligence which is placed upon it by the statute. On the other hand, the defendant insists that a purchaser of a railroad ticket while standing on a station platform waiting for the arrival of a train on which he intends to take passage does not come within the class of passengers protected by the statute, and that such a person is not a "passenger being transported" over the carrier's road. And in this connection the defendant calls attention to the fact that the petition does not allege that the plaintiff was injured while attempting to alight from or board his train, or that he had begun his journey by taking passage on the train. It is obvious therefore that the determination of the question presented rests upon the inquiry whether a person who has bought a ticket and is upon a station platform awaiting the arrival of a train upon which he intends to take passage is a passenger being transported over its road.

Defendant argues that the common law recognized two classes of passengers, those being transported and those not being transported, and established different degrees of care, and in case of injury different rules as to the bur-

den of proof. That as to the first class the carrier was bound to exercise the highest degree of care which human skill and foresight could devise, and that an injury done to one of this class arising from defective roadbed, equipment or management was presumed to have been caused by the negligence of the carrier. That as to the second class, those not being actually transported, the carrier was only bound to exercise ordinary care, and from an injury to one of this class no presumption of negligence was raised against the carrier.

As to the first proposition there is no difference of opinion worthy of mention. The doctrine that the carrier must exercise the highest degree of care is accepted as the settled rule in nearly all jurisdictions. The reason for this rule is well stated by the supreme court of the United States in an early case, *Philadelphia & R. R. Co. v. Derby*, 14 How. (U. S.) *468, decided in 1852: "When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of 'gross.' " "Any relaxation of the stringent policy and principles of the law affecting such cases, would be highly detrimental to public safety."

As to the second proposition, however, the authorities are not uniform, one class of cases following the doctrine laid down in 2 Shearman and Redfield, Law of Negligence (5th ed.), sec. 501, as follows:

"When Ordinary Care Only Required. The requirement of extraordinary care, being founded upon the special risk of human life involved in the business of carrying passengers, is not to be extended to incidents of the business which do not involve such risk, and in which the carrier stands in the same relation to the passenger as do

other business men from whom such peculiar care is not required. Hence, while a carrier must use ordinary care to make the means of approach and departure and other accessories safe for the use of passengers, he is not required to use any higher degree of care with reference to these things. Therefore, with regard to platforms, stairs, waiting-rooms in a station, the ground surrounding it and other premises of a railroad company, its obligation to passengers is only one of ordinary care, in common with that of all other occupants of land or buildings, inviting persons to enter thereon, for compensation; since passengers are no more endangered, in such places, than they are in similar premises not belonging to a railroad company." *Pennsylvania R. Co. v. Marion,* 104 Ind. 239; *Kelly v. Manhattan R. Co.,* 112 N. Y. 443; *Lafflin v. Buffalo & S. R. Co.,* 106 N. Y. 136; *Falls v. San Francisco & N. P. R. Co.,* 97 Cal. 114; *Moreland v. Boston & P. R. Co.,* 141 Mass. 31; *Jordan v. New York, N. H. & H. R. Co.,* 165 Mass. 346; *Stokes v. Suffolk & C. R. Co.,* 107 N. Car. 178; *McDonald v. Chicago & N. W. R. Co.,* 26 Ia. 124; *Southern R. Co. v. Reeves,* 116 Ga. 743.

The other class of cases hold in the main that the carrier's duty to a passenger is the exercise of the highest care at all times that the relation subsists, from the time that a person becomes a passenger until he ceases to be such, his journey is completed and he has left the carrier's premises. A few of the cases holding the carrier to the same degree of care with reference to a person who has become a passenger, from the time he assumes such relation until within a reasonable time after his alighting from the train and departure from the platform or station at his destination, are the following: *Gaynor v. Old Colony & N. R. Co.,* 100 Mass. 208, 97 Am. Dec. 96; *Grand Rapids & I. R. Co. v. Martin,* 41 Mich. 667; *Knight v. Portland S. & P. R. Co.,* 56 Me. 234; *Warren v. Fitchburg R. Co.,* 8 Allen (Mass.), 227; *Dodge v. Boston & B. Steamship Co.,* 148 Mass. 207; *Weston v. New York Elevated R. Co.,* 73 N. Y. 595; *Norfolk & W. R. Co. v. Galli-*

*her*, 89 Va. 639; *Burke v. Chicago & N. W. R. Co.*, 108 Ill.
App. 565; *Krantz v. Rio Grande W. R. Co.*, 12 Utah, 104,
30 L. R. A. 297; *Johns v. Charlotte, C. & A. R. Co.*, 39
S. Car. 162, 20 L. R. A. 520.

The question as to which of these two rules governs the
liability of railroads for injuries to passengers upon their
station platforms or premises in this state, as presented
by the pleading in this case, depends upon the proper con-
struction to be given to the phrase, "a passenger while
being transported over its road." If the intention of the
legislature was that this phrase should be construed lit-
erally, then a passenger not actually in process of being
moved or carried from one point to another would not be
within the protection of the statute. This court, however,
has recently had occasion to construe this phrase to some
extent. In the case of the *Chicago, R. I. & P. R. Co. v.
Sattler*, 64 Neb. 636, 646, this provision is discussed with
reference to the facts in that case, where a passenger left
the train on his own volition for a purpose not incident
to the journey. In that case it is said:

"We are agreed that the words 'while being transported
over its road' is a qualifying phrase, intended to limit
liability on the part of the company, and that we must
give it the force intended by the legislature. We cannot,
however, agree with the plaintiff in error that it was in-
tended to exclude all passengers who leave the car pro-
vided for them by the carrier. It is well known that many
—perhaps most—roads provide eating houses and other
accommodations for the comfort or convenience of their
patrons, and that regular stops are made for meals, re-
quiring the passengers to leave the car in which they are
being transported, and often to cross numerous tracks on
their way to and from the car to the dining room or res-
taurant. In such cases one does not lose his character as
a passenger in the course of transportation over the road,
or the protection of the statute. The duty of the company
to provide him safe egress and ingress for such necessities
as are required on his journey, and which the road assumes

to furnish, and which it invites him to partake of, is no less stringent than to furnish him safe passage on its cars. While seated in the dining room of the company he is under its control, and must conform to its rules, as fully as while on the train; and, while thus subject to the rules and regulations of the company, he is their passenger, entitled to like protection from damage from the operating of the road as while seated in the car, proceeding on his journey. We believe and hold that it was intended to include in the words 'while being transported over its road' all passengers actually on the train, whether the same is in motion or standing on any part of the road: and it further includes those passengers leaving the train for any necessary purpose incident to their journey, such as a change of cars, or to procure refreshments at any point where the same is furnished by the company, and where an express or implied invitation is extended to the passengers to leave the car for that purpose." The phrase then is not in all cases to be literally construed.

If a person who has left the train for any necessary purpose incident to the journey, such as to procure refreshments at a point where the same is furnished by the company, is, while upon the platform on his way to the eating house and during his return to the train, "a passenger being transported" within the contemplation of the statute, is not the intending passenger who has purchased his ticket and who may walk side by side with him upon the station platform on his way to the same coach equally a passenger being transported? He is upon the company's premises furnished to him for the purpose of procuring his ticket and giving him access to the train, and has begun his journey. Should an injury occur to both, can one rule be applied to an action brought by the passenger who was returning from the dining room to the train, and another rule to the passenger who was walking with him from the waiting room or ticket office to the same train? Further than this, how can a reasonable distinction be drawn between the duty of the railroad company to the

passenger sitting in a train about to move from the station, and a passenger upon the platform, or in the station house, ready to take the train and begin his journey?

It is argued in the defendant's brief that the legislature, in adopting the language of the courts when defining the class of passengers entitled to the highest degree of care, adopted the same meaning and construction as was given to that language by those courts. But as we have seen the courts are not uniform in their holdings in this respect, and from the whole course of legislation and judicial construction within this state we believe that the legislature, by the use of the language quoted in the section under consideration, intended no more and no less than that every individual to whom the carrier owed the care due a passenger should, as long as the relation existed, be within its terms, but that when the relation ceases, either by voluntary disregard of reciprocal rights and duties of the passenger as in the *Sattler* case, or by disregard of the reasonable rules and regulations of the carrier on the part of the passenger, or by his criminal negligence, the carrier becomes absolved upon his part from the presumption of negligence created by the statute; or, to place the idea in other words, that from the time the intending passenger places himself under the charge of the carrier as he begins his journey until he is afforded the opportunity to leave the premises of the carrier at its termination, he is "a passenger being transported," unless by some act not attributable to the carrier the relation ceases.

When does the relation of carrier and passenger begin? With but minor differences depending upon the circumstances in each particular case, the courts are generally agreed upon this point. The general rule seems to be that where a person intending to take passage upon a train goes into a station within a reasonable time prior to the hour of departure of the train, in a proper manner, and there, either by the purchase of a ticket or in some other manner, indicates to the carrier his intention to take

passage, from that time on, while waiting for his train, he is entitled to all the rights and privileges of a passenger. In 4 Elliott, Railroads, p. 2459, note 1, it is said the true doctrine is announced by the supreme court of Massachusetts in *Webster v. Fitchburg R. Co.*, 161 Mass. 298. In that case a person who held a ten-trip ticket was struck and killed by a train when he was running rapidly from the direction of the public street across the defendant's premises outside of the passenger station to the track on which was an incoming train, apparently with a view to take another train which was about to start for Boston on the track beyond. It was contended that, inasmuch as he had previously obtained a ticket and was on the defendant's premises in a place designed for the use of passengers outside of the station, and was about to take a train, he had become a passenger. The court, however, say:

"One becomes a passenger on a railroad when he puts himself into the care of the railroad company to be transported under a contract, and is received and accepted as a passenger by the company. There is hardly ever any formal act of delivery of one's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation, and so the existence of the relation of passenger and carrier is commonly to be implied from circumstances. These circumstances must be such as to warrant an implication that the one has offered himself to be carried on a trip about to be made, and that the other has accepted his offer, and has received him to be properly cared for until the trip is begun, and then to be carried over the railroad. A railroad company holds itself out as ready to receive as passengers all persons who present themselves in a proper condition, and in a proper manner, at a proper place to be carried. It invites everybody to come who is willing to be governed by its rules and regulations. In a case like this, the question is whether the person has presented himself in readiness to be carried, under such circumstances in reference

53

to time, place, manner, and condition that the railroad company must be deemed to have accepted him as a passenger."

The rule stated in this case has been approved and cited many times since its announcement, both by text writers and by courts, and we believe the doctrine stated to be sound. If the plaintiff has not brought himself within this rule he was not a passenger, and never became such in the eye of the law, and unless by the allegations of his petition he is within the class his petition will not state a cause of action. It will be observed that the petition contains no allegation in regard to the time when the train upon which he was intending to take passage was due to depart from Norfolk. It alleges the purchase of a ticket, but that alone does not make a person a passenger.

In *Illinois C. R. Co. v. O'Keefe*, 168 Ill. 115, 39 L. R. A. 149, it is said:

"One does not become a passenger until he has put himself in charge of the carrier and has been expressly or impliedly received as such by the carrier. * * * The purchase of a ticket does not make one a passenger unless he comes under the charge of the carrier and is accepted for carriage by virtue of it."

This case is reported in 61 Am. St. Rep. 68, with a monographic note upon the general subject of who are passengers and when they become such.

In *Illinois C. R. Co. v. Laloge*, 113 Ky. 896, 62 L. R. A. 405, the facts were that a passenger went to the railroad station five hours before her train was due, and was assaulted. A statute of Kentucky requires the ticket office and waiting room to be opened, lighted and warmed 30 minutes before train time. The court held that it was the duty of the carrier to provide such facilities for intending passengers within a reasonable time before the departure of its trains. That 30 minutes was a reasonable time, and that, by coming to the station five hours before the schedule time for the departure of the train, the plaintiff did not become a passenger. That there was no obliga-

tion upon the railroad to furnish accommodations for the entertainment for an indefinite length of time of those who contemplate in the future becoming its passengers. That there was no invitation, either express or implied, until within 30 minutes before train time, and that consequently it owed no duty to the plaintiff other or different from that owing to any ordinary person.

In *Phillips v. Southern R. Co.*, 124 N. Car. 123, 45 L. R. A. 163, the circumstances were that a person went to the railroad station five hours before train time. The carrier had a rule to close its waiting room until 30 minutes before the time of departure of each train. The night was cold, the plaintiff was ejected, and was injured by the contraction of a severe cold and subsequent illness. In the opinion the court say:

"A party coming to the railroad station with the intention of taking the defendant's next train becomes, in contemplation of law, a passenger on defendant's road, provided that his coming is within a reasonable time before the time for departure of said train. To constitute him such passenger it is not necessary that he should have purchased his ticket, as seems to have been considered by his Honor. 1 Fetter, Carriers of Passengers, sec. 288. But the purchase of the ticket would probably be considered the highest evidence of his intention. But still, it is his coming to the station within a reasonable time before, with the *intention* to take the next train, that creates the relation of passenger and carrier."

Another instructive case is *Louisville & N. R. Co. v. Reynolds*, 71 S. W. (Ky.) 516. The plaintiff had gone to the station to take a train at 11 P. M. His train was late, though he testified he did not know this. While he was standing on the platform about 15 feet from the track, he was struck by a piece of coal which fell from a train which was passing rapidly by with loaded coal cars, and was severely injured. The court said:

"Appellee was * * * rightfully on the platform, and sustained the relation of passenger to the appellant for he

was there to take the train, and, the waiting room being closed, had a right to be on the platform. It was train time, and so he had a right to come to the station at this time to take the train; and if it be true that he was told that the train was late, being at the station he had a right to remain there, and wait for it."

With these views we concur.

A railroad company is not bound to furnish a place of entertainment for persons who may intend at some future time to become passengers over its road, and such a person who resorts to its station, or who stands upon its platform exposing himself to such dangers and risks as may naturally and obviously occur at such a place by reason of rapidly moving trains, switching of freight cars, or engines passing by or by the moving of articles of freight, assumes and takes upon himself the risk of injury, and is entitled to the carrier's protection in no greater degree than any other licensee. Ordinary care under all the circumstances of the time and place is all he is entitled to. The fact that he may have procured a ticket is immaterial.

The relation of carrier and passenger does not begin until within a reasonable time prior to the time fixed for the departure of the train the prospective passenger intends to take, and not until he has in some manner, either expressly or impliedly, placed himself within the carrier's charge. If, within a reasonable time before the departure of the train he intends to take, he goes to the place provided for the reception of intending passengers, and there places himself actually or impliedly within the carrier's care, then, and not until then, the law places around him the protection vouchsafed to passengers, and charges the carrier with the highest degree of care for his safety. To hold otherwise would be to place a most unjust and onerous burden upon the carrier. In this day and age of "limited trains," "lightning expresses," "flyers," "cannon balls," as they are sometimes fancifully designated, many stations and platforms upon main lines of railroads are passed by such trains at rates of speed as high as 60 miles

an hour.  If a railroad company were held to the same high degree of care to persons who are not passengers over its road, resorting to its stations to loaf or loiter, it would be compelled to moderate the rate of speed of such trains at every way station along its line, and otherwise would be compelled to interfere with the operation of its trains, and the proper conduct of its business, to preserve the safety and welfare of persons to whom it owed no duty. Such a rule would be intolerable, and has not been enacted by the section under consideration.   In order to state a cause of action upon the statutory duty of a railroad company to a passenger, it is necessary that the facts stated show that the person suing is one of a class of persons to whom the remedy is afforded by the statute.   To plead that he is a passenger, in a case where the existence of such relation to the carrier is at issue, pleads a mere conclusion of law and is not sufficient.  This rule has been well stated in the case of *Harris v. Stevens,* 31 Vt. 79, where the plaintiff sued in trespass for removal from a railroad station house, and in his replication attempted to establish his right to be and remain at the station.  The court sustained a demurrer to the replication, and entered judgment for the defendant.   In the syllabus the court say:  The right to enter and remain at a railroad station house extends only as far as is reasonably necessary to secure to the traveler the full and perfect exercise and enjoyment of his right to be carried upon the cars, and as to what is a reasonable time will depend upon the circumstances of each particular case.   And in the opinion it is said:

"It is not alleged that it was the intent of the plaintiff to go upon the then next regular train, or that his ticket was for such train.  For aught that is alleged his ticket may have been for, and his intent to go upon, one of those trains called excursion trains that are advertised to run at some particular time, and for which tickets are sold many days in advance of the time of departure.   In this respect we think the replication is defective; the plaintiff

should have alleged that at the time, when, etc., he was at the station awaiting the departure of a train that was expected soon to leave, and on which he intended to go. The replication should show that the plaintiff was there intending to go upon a train that was expected to leave within such a short period of time thereafter, that, in view of the rule as before laid down, he would have the right to remain at the station until its departure. This replication, we think, does not show such a state of facts as are necessary to vest such right in the plaintiff, and therefore it is insufficient."

So far then from having brought himself within the class of "a passenger being transported" as the statute prescribes, plaintiff in this case has not even pleaded facts sufficient to show that he was a passenger under the non-statute law prescribing the qualifications of the class of persons embraced under that general designation. For these reasons, we are of the opinion that the petition does not state a cause of action under the statute, and that the demurrer and objections to the introduction of evidence should have been sustained.

A bill of exceptions was settled and allowed in the case, but, since the sole question presented is the sufficiency of the petition, we have not examined the same.

We recommend that the judgment of the district court be reversed and cause remanded for further proceedings.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

The following opinion on rehearing was filed March 8, 1906. *Former opinion modified:*

Carriers: PASSENGERS. Upon reexamination of the question, the sixth paragraph of the syllabus to the former opinion, *ante*, p. 773, is disapproved, and former opinion modified.

LETTON, J.

A rehearing of this case was granted mainly upon the question of whether the proposition laid down in the sixth paragraph of the syllabus of the former opinion, *ante*, p. 773, is a correct statement of the law. This praagraph is as follows: "From the time a passenger, as defined herein, places himself under the charge of the carrier as he begins his journey until he is afforded the opportunity to leave the premises of the carrier at its termination, he is 'a passenger being transported,' unless by some act not attributable to the carrier the relation ceases." No attack has been made upon the principles laid down in the former opinion as to when the relation of carrier and passenger begins, nor is the applicability of the rule questioned requiring the highest degree of care to be exercised by the carrier for the safety of a passenger, but it is earnestly contended that the proposition above quoted was unnecessary to a decision of the case and is unsound as a statement of the law. In *Chicago, R. I. & P. R. Co. v. Sattler,* 64 Neb. 636, it is said:

"We believe and hold that it was intended to include in the words 'while being transported over its road' all passengers actually on the train, whether the same is in motion or standing on any part of the road: and it further includes those passengers leaving the train for any necessary purpose incident to their journey, such as a change of cars, or to procure refreshments at any point where the same is furnished by the company, and where an express or implied invitation is extended to the passengers to leave the car for that purpose."

In our former opinion it was asked whether one rule could be applied to an action brought by a passenger returning from the dining room to the train, and another rule to a passenger walking with him from the waiting room or ticket office to the same train, and it was upon this statement in the *Sattler* case that the proposition herein attacked was founded. After further argument,

and upon more mature consideration, we are convinced that there is merit in plaintiff in error's contention, and that, as said in the *Sattler* case, we must give the qualifying phrase the force intended by the legislature. The difficulty lies in defining and limiting the class of persons who are "passengers' while being transported over its road." When does the act of transportation begin and when does it end, and when, if ever, during the journey is the passenger not within the protection of the statute? We have held that this section makes railroad companies insurers of the safety of their passengers. *Chicago, R. I. & P. R. Co. v. Zernecke*, 59 Neb. 689; *Chicago, B. & Q. R. Co. v. Landauer*, 39 Neb. 803; *Fremont, E. & M. V. R. Co. v. French*, 48 Neb. 638. Such an onerous burden should not be imposed to a greater extent than warranted by legislative sanction. In its brief, plaintiff in error concedes that the statute should apply to passengers who are getting on or off the platform and steps of the cars, and who are actually riding within the cars, but whether this is a proper limitation or not we are not called upon to determine in this case. It would seem, however, that, after a person becomes a passenger as laid down in the former opinion, the carrier is held to his common law liability alone until the time when the passenger is in the act of journeying, and that from the time that act begins until its termination, and during the necessary incidents of the transportation, he is "being transported." The discussion, in the former opinion and at this time upon this point, is rather academic than necessary to the decision of the case, and it is only for the purpose of avoiding misconceptions in the future that we thought it necessary to reexamine this question. Whether or not a passenger is a passenger "being transported" depends upon the circumstances of each particular case and, until the occasion arises, it is difficult, if not impossible, to draw an exact line between the two classes. Upon the whole, since it is unnecessary in this case to pass upon this question, we think it had better be left an open one for future consider-

ation, when it becomes necessary to the determination of an actual controversy in which discrimination and distinction between the two classes of passengers must of necessity be made. The sixth paragraph of the syllabus is therefore disapproved, and the opinion modified accordingly.

OPINION MODIFIED.