NORTHERN PAC. RY. CO. v. MARINOVICH.

. (Circuit Court of Appeals, Ninth Circuit. May 15, 1911.)

No. 1,934.

1. CARRIERS (§ 320*)—INJURY TO PASSENGERS—FLAG STATION—CREATION OF
   RELATION—REASONABLE TIME.
   Plaintiff, desiring to take a train at a flag station where the defendant
   maintained no agent, inquired at a store when the next train would ar-
   rive, and was told that it would come along some time. He went to the
   waiting room 4 hours and 45 minutes before the train was due to leave,
   and while there was injured by logs falling from a freight train, which
   struck the station building and demolished it. Held, that the court prop-,
   erly submitted to the jury whether, under all the circumstances, plaintiff
   went to the station a reasonable time before train time, so as to be en-
   titled to the rights of a passenger.
   [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

2. CARRIERS (§ 246*)—INJURIES TO PASSENGERS—EVIDENCE.
   Where, in an action for injuries to a passenger while waiting for a
   train in a flag station, defendant denied that plaintiff intended to become
   a passenger on its train, and attempted to show that he was a mendicant,
   and while waiting for a train, as he claimed, had asked for money from
   a fellow countryman, the court did not err in permitting proof that
   plaintiff had $25 on his person at the time, was possessed of $300 or $400
   in money, owned land in Austria, and to prove by receipts that he had
   made remittances to his wife there.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1284; Dec. Dig.
   § 246.*]

In Error to the Circuit Court of the United States for the Western
Division of the Western District of Washington.

Action by John Marinovich against the Northern Pacific Railway
Company. Judgment for plaintiff, and defendant brings error. Af-
firmed.

Geo. T. Reid, J. W. Quick, and L. B. Da Ponte, for plaintiff in
error.

Gordon & Askren, David & Westcott, and J. H. Easterday, for de-
fendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLV-
ERTON, District Judge.

GILBERT, Circuit Judge. The defendant in error lived at Wilke-
son, a station on a branch line of the plaintiff in error's railroad. On
the morning of May 12, 1910, he went from Wilkeson by train to
South Prairie, 5 miles distant. From there he walked westward on
the line of the railroad, a distance of 11 miles, to McMillan, for the
purpose, as he testified, of looking at the country with a view to pur-
chasing a piece of land. He arrived at McMillan about noon. At
that station there were two stores, and there was a small waiting room
for passengers, situated on the right of way of the railroad company.
There was no station agent in charge of the waiting room, but in one
of the stores the railroad company had an agent, who sold tickets to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

intending passengers on the road. There was no sign on the store to indicate the presence of such an agent. The defendant in error entered the other store, purchased a luncheon, and inquired when a train would return to South Prairie, and he testified that he was told that it would come along some time. He testified that he did not know about the time of trains going through there, and that he wanted to take the first train to South Prairie. He then went and sat inside the little station house to await the coming of a train, intending, as he said, to become a passenger on the first train to South Prairie. While waiting there, a freight train loaded with logs came by, and when opposite the station a log fell from one of the cars, the forward end of which struck the ground, and the other end remaining on the car, pushed the logs off the car and off the following cars, and some of the logs struck the station building, demolishing it, and severely injuring the defendant in error. For these injuries, the defendant in error recovered a judgment in the court below, on a complaint which alleged that he intended to become a passenger upon the next south-bound train, and that he went to the station for that purpose, and while there waiting for the train, without any fault or negligence on his part, the plaintiff in error carelessly and negligently so operated a train loaded with logs that he sustained serious physical injuries.

[1] Error is assigned to the refusal of the court at the close of the testimony to instruct the jury to return a verdict for the plaintiff in error. The assignment raises the question whether or not the defendant in error was, at the time when he was injured, a prospective passenger, and as such entitled to the rights and the remedies of a passenger upon the road of the plaintiff in error. Upon this question the trial court instructed the jury as follows:

"It is not the policy of the law to require railroad companies to maintain their station facilities for the benefit of persons who at some future time expect to become passengers. There must be some limit as to the right of a person to use a station, with the obligations, or rather with the rights, of a passenger. Now, the law does not fix that limit by any number of minutes, or any number of hours, or in any other way. It says a reasonable time. What is a reasonable time is a question in this case of fact for you to determine. It depends upon the circumstances of the case. The circumstances here are more or less contested. I will not undertake to state the circumstances pro and con. They have been argued by counsel and appear in the evidence. It is for you to say, under all those circumstances, whether, at the time of the occurrence, it was a reasonable time for the plaintiff to be there intending to take passage upon the next train."

No exception was taken to the instruction; but the plaintiff in error, in support of its contention that the court erred in denying its motion for an instructed verdict, points to the fact that the next train from McMillan to South Prairie was not due until 4 hours and 45 minutes after the time when the defendant in error went to the station, and cites cases which tend to show that a railroad company is not bound to furnish a place of entertainment for persons who may intend, at some future time, to become passengers over its road, and that the relation of carrier and passenger does not begin until within a reasonable time prior to the time fixed for the departure of the train which the prospective passenger intends to take. Thus, in Fre-

mont, E. & M. V. R. Co. v. Hagblad, 72 Neb. 773, 101 N. W. 1033, 106 N. W. 1041, 4 L. R. A. (N. S.) 254, it was held that where a person, intending to take passage upon a train, goes into a station within a reasonable time prior to the hour of the departure of the train, in a proper manner, and there, either by the purchase of a ticket, or in some other manner, indicates to the carrier his intention to take passage, from that time on, by waiting for his train, he is entitled to the acknowledged rights and privileges of a passenger. In Illinois Central R. Co. v. Laloge, 113 Ky. 896, 69 S. W. 795, 62 L. R. A. 405, the plaintiff went to the depot at 8 o'clock in the evening, and was informed that a train would not be due until 1:05 in the morning. At 10 o'clock he was assaulted in the depot. The court held it was the duty of a carrier to provide facilities for intending passengers within a reasonable time before the departure of its trains, and that by going to the station 5 hours before the schedule time the plaintiff did not become a passenger. In Andrews v. Yazoo & M. V. R. Co., 86 Miss. 129, 38 South. 773, it was held that where one who intended to take a train not due for an hour or more, and who had purchased no ticket, but who had obtained permission from the station agent to do some writing in the office of the station, and while there became involved in an altercation with the agent and was assaulted, the relation of passenger and carrier did not exist.

The cases cited are all cases in which the prospective passenger had the opportunity to know at what time the train which he intended to take would start, and they were all cases in which the station was in charge of an agent, from whom such information could be obtained. In the case at bar, no such information was afforded. The defendant in error testified that he was not acquainted with the time schedule of the trains. There was evidence that he had made some effort to ascertain at one of the stores at what time the train would leave; but the information which he seems to have obtained was such as to lead him to believe that the trains were running irregularly, and that a train might come at any time. The railroad company had not placed an agent in charge of the station, and had not taken the trouble to post any notice to advise prospective passengers where information could be obtained. Under all the circumstances, therefore, we are not convinced that the court erred in submitting to the jury the question whether or not the defendant in error took his place at the station within a reasonable time. What is a reasonable time must depend upon the circumstances in the case. The defendant in error had indicated his purpose to become a passenger, by taking his place in the station to await the coming of the train which he intended to take, and on which he was prepared to pay for his passage. His intention was not made known to the carrier, for the reason that the carrier had no agent at the station to represent it. It had not refused him transportation, and it cannot be said that it had not acquiesced in his intention to become a passenger. Its open, unoccupied station house was in itself an invitation to prospective passengers.

[2] Counsel for the defendant in error, in order to show that his client had at the time of the accident money with which to pay for

his ticket, elicited the testimony that the defendant in error had $25 upon his person at that time, and that he possessed $300 or $400 in money, and owned some land in Austria, and that he had sent money to his wife in Austria, and to establish that fact he offered in evidence receipts of three such transmissions of money through the post office department. Objection was made to the evidence of the receipts and the ruling of the court admitting the same is assigned as error. The transcript does not inform us at what time the moneys were sent, or what was the amount thereof. It could hardly be said that the admission of such testimony in such a case would be reversible error. But it is clear, in view of the issues and the testimony, that its admission in this case was not error for which the judgment should be reversed. The plaintiff in error, in its answer to the complaint, denied that the defendant in error had intended to become a passenger upon its train, and in the course of the trial had attempted to show that he was a mendicant, and that while he was at McMillan he had asked money of a fellow countryman of his. It was not improper, therefore, to show that the defendant in error was not a trespasser on the property of the railroad company, that he had the means wherewith to purchase a ticket, and, as tending to establish the fact that he had earned and possessed money, to prove by the receipts that he had made remittances to his wife in Austria.

The judgment is affirmed.