[No. 8713.   Department Two.   June 11, 1910.]

C. R. WHITLOCK, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY et al., *Appellants*.[1]

CARRIERS—PASSENGERS—EJECTION FROM DEPOT — ASSAULT BY OFFICER—LIABILITY OF CARRIER. A deputy sheriff who was called by a railway station agent to assist in ejecting undesirable trespassers who were occupying seats in the depot, acts as agent of the railway company and within the scope of his authority, when he wrongfully assaults a passenger in attempting to eject persons from the depot, at the agent's request, and the company is liable for the damages inflicted.

SAME—NEGLIGENCE OF CARRIER—ASSAULT ON PASSENGER—EVIDENCE —SUFFICIENCY. It is negligence for a railway station agent, who called a deputy sheriff to assist in ejecting undesirable trespassers

[1]Reported in 109 Pac. 188

from the depot, to fail to notify the officer who the passengers were, when this could have been easily done; and in such case proof of an assault upon a passenger by the officer makes out a *prima facie* case for damages against the railway company.

SAME—PASSENGERS—EJECTION FROM DEPOT—DEGREE OF CARE—INSTRUCTIONS. In an action by a passenger, waiting in the depot for his train after purchasing a ticket, for an assault by an officer called by the agent to eject trespassers from the depot, it is correct to instruct that the railway company owes the highest degree of care that an ordinarily prudent man would give for the protection of such passengers as against its own machinery, appliances, operation and conduct of its employees; and the use of the word "machinery" is not prejudicial as interjecting a new element in the case, where the issue was clearly defined, the jury could not have been misled, and were instructed that plaintiff could not recover if the company used reasonable care to prevent the assault.

CARRIERS—PASSENGERS—WHO ARE. A person who had purchased a railway ticket and was waiting in the depot for his train is a passenger.

DAMAGES—PERSONAL INJURIES—ASSAULT—EXCESSIVE VERDICT. A verdict for $1,000 for an assault upon a passenger in ejecting him from a depot is excessive and should be reduced to $500, where he suffered for only about thirty-six hours from a blow on the neck, and no further attempt was made to eject him upon the agent's calling attention to the mistake of the officer in attempting to do so.

Appeal from a judgment of the superior court for King county, Gay, J., entered October 1, 1909, upon the verdict of a jury rendered in favor of the plaintiff for $1,000 damages for an assault upon a passenger. Reversed, unless $500 is remitted.

*I. B. Knickerbocker,* for appellant Roehl.

*Carroll B. Graves* and *Charles H. Winders,* for appellant Railway Company, contended, among other things, that the relation of master and servant did not exist between the officer and the company. *Healey v. Lothrop,* 171 Mass. 263, 50 N. E. 540; *Tolchester Beach Imp. Co. v. Steinmeier,* 72 Md. 313, 20 Atl. 188, 8 L. R. A. 846; *Brunswick & W. R. Co. v. Ponder,* 117 Ga. 63, 43 S. E. 430, 97 Am. St. 152, 60 L. R. A. 713; *Sinclair v. Baltimore,* 59 Md. 592; *Kehoe v.*

*Marshall Field & Co.*, 141 Ill. App. 140,; Id., 237 Ill. 470, 86 N. E. 1054. The officer's assault was not within the scope of his employment. *Penny v. New York Central etc. R. Co.*, 53 N. Y. Supp. 1043; *Cunningham v. Seattle Elec. Co.*, 3 Wash. 471, 28 Pac. 745; *Thorburn v. Smith*, 10 Wash. 479, 39 Pac. 124; *Chase v. Knabel*, 46 Wash. 484, 90 Pac. 642, 12 L. R. A. (N. S.) 1155; *Jones v. Hoge*, 47 Wash. 663, 92 Pac. 433, 14 L. R. A. (N. S.) 216; *Mills v. Seattle, Renton & Southern R. Co.*, 50 Wash. 20, 96 Pac. 520; 2 Hutchinson, Carriers (3d ed.), p. 1283. It was error to instruct that the company owed the highest degree of care in the maintenance of its station and the protection of its passengers. 6 Cyc. 605; 5 Am. & Eng. Ency. Law (2d ed.), p. 532; *Fewings v. Mendenhall*, 88 Minn. 336, 93 N. W. 127, 97 Am. St. 519, 60 L. R. A. 601; *Crowe v. Michigan Cent. R. Co.*, 142 Mich. 692, 106 N. W. 395; *Hiatt v. Des Moines N. & W. R. Co.*, 96 Iowa 169, 64 N. W. 766; *Georgia etc. R. Co. v. Brown*, 120 Ga. 380, 47 S. E. 942; *Tate v. Illinois Cent. R. Co.* 26 Ky. Law 309, 341, 81 S. W. 256; *Flenn v. Lake Erie & W. R. Co.* (Ind. App.), 73 N. E. 861; *Laffin v. Buffalo & S. W. R. Co.*, 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; *Palmer v. Pennsylvania Co.*, 111 N. Y. 488, 18 N. E. 859, 2 L. R. A. 252; *St. Louis etc. R. Co. v. Wilson*, 70 Ark. 136, 66 S. W. 661, 91 Am. St. 74; *Batton v. Southern & N. A. R. Co.*, 77 Ala. 591, 54 Am. Rep. 80; *Brown v. Chicago R. I. & P. R. Co.*, 139 Fed. 972, 2 L. R. A. (N. S.) 105; *Houston & Texas Cent. R. Co. v. Phillio*, 96 Tex. 18, 69 S. W. 994, 59 L. R. A. 392; *Trinity & S. R. Co. v. O'Brien*, 18 Tex. Civ. App. 690, 46 S. W. 389; *Moreland v. Boston & P. R. Co.*, 141 Mass. 31, 6 N. E. 225; *Falls v. San Francisco & N. P. R. Co.*, 97 Cal. 114, 31 Pac. 901.

*Holzheimer, Herald & Holzheimer*, for respondent, cited: *Fremont E. & M. Valley R. Co. v. Hagblad*, 72 Neb. 773, 101 N. W. 1033, 4 L. R. A. (N. S.) 254; *Gaynor v. Old Colony & N. R. Co.*, 100 Mass. 208, 97 Am. Dec. 96; *Grand*

*Rapids & I. R. Co. v. Martin,* 41 Mich. 667, 3 N. W. 173; *Knight v. Portland etc. R. Co.,* 56 Me. 234, 96 Am. Dec. 449; *Warren v. Fitchburg R. Co.,* 8 Allen 227, 85 Am. Dec. 700; *Webster v. Fitchburg etc. R. Co.,* 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521; *Dodge v. Boston & B. S. Co.,* 148 Mass. 207, 19 N. E. 373, 12 Am. St. 541, 2 L. R. A. 83; *Weston v. New York Elev. R. Co.,* 73 N. Y. 595; *Norfolk & W. R. Co. v. Galliher,* 89 Va. 639, 16 S. E. 935; *Burke v. Chicago & N. W. R. Co.,* 108 Ill. App. 565; *Crantz v. Rio Grande Western R. Co.,* 12 Utah 104, 41 Pac. 717, 30 L. R. A. 297; *Johns v. Charlotte etc. R. Co.,* 39 S. C. 162, 39 Am. St. 709, 20 L. R. A. 520; *Keokuk Northern Line Packet Co. v. True,* 88 Ill. 608; *Clussman v. Long Island R. Co.,* 73 N. Y. 606; *Dice v. Willamette T. & L. Co.,* 8 Ore. 60, 34 Am. Rep. 575; *McElroy v. Nashua etc. R. Co.,* 4 Cush. 400, 50 Am. Dec. 794; *Taylor v. Grand Trunk R. Co.,* 48 N. H. 304, 2 Am. Rep. 229; *Simmons v. New Bedford etc. Steamboat Co.,* 97 Mass. 361, 93 Am. Dec. 99; *Pittsburg etc. R. Co. v. Hinds,* 53 Pa. St. 512, 91 Am. Dec. 224; *Southern R. Co. v. Kendrick,* 40 Miss. 374, 90 Am. Dec. 332.

MOUNT, J.—The respondent recovered a judgment against the appellants for $1,000, on account of an assault committed upon him by the appellant Roehl. The plaintiff alleged, that the defendant Roehl was an agent and servant of the railway company, employed as a watchman at its station at Auburn; that on March 21, 1909, plaintiff purchased a ticket at that station, entitling him to transportation from Auburn to Covington Station; that after purchasing such ticket, and while peacefully awaiting the arrival of the train, the defendant Roehl wrongfully endeavored to eject him from the station and violently assaulted plaintiff and inflicted severe injuries upon him. At the close of plaintiff's evidence, the defendants moved the court for a nonsuit, which motion was denied.

It is argued here that the facts were not sufficient to support a verdict for the plaintiff. It appears that Auburn Station is a junction point on the main line of the Northern Pacific railway, that all trains passing from the east and west transfer at this point, and that many disreputable persons congregate in and about this station, and especially on winter nights. The station is outside of the corporate limits of the town. The plaintiff entered the station about eleven o'clock at night, and purchased a ticket for Covington, and was in the waiting room awaiting his train which was due in a few minutes. Mr. Edward James was the agent in charge of the station. During that day a number of persons, who were described as undesirable persons and who were not passengers, had been in and about the station. The night was cold, and these persons had persisted in coming into the station and congregating about the stove. These persons were ordered away from the premises by the agent. It is not shown that the plaintiff was one of these persons, or that he knew that any of them had been ordered away.

About eleven o'clock at night the agent by telephone called Mr. Roehl, who was town marshal of Auburn and a deputy sheriff of the county of King, to come to the station. Mr. Roehl, in response to this call, came to the station, and was informed by the agent that there were a number of undesirable persons in the waiting room who had not purchased tickets and who did not intend to do so, and that he desired such persons ejected. The agent also informed Mr. Roehl that several persons there held tickets. Mr. Roehl then told Mr. James to go into the waiting room and notify all persons who did not have tickets, and who did not intend to purchase tickets, to leave. The agent then, followed by Mr. Roehl, went from his office to the waiting room, and quietly requested one or two persons to leave. At the same time Mr. Roehl began to push several persons from the room, among whom was the plaintiff. Mr. Roehl struck the plaintiff a blow on the neck with his hand or fist. About this time Mr.

James, the agent, saw what Mr. Roehl was doing, and told him that the plaintiff had purchased a ticket. Mr. Roehl then made no further effort to eject the plaintiff.

It is argued by the appellant railway company, in substance, that Mr. Roehl was not the agent of the company, and was acting in his capacity as a peace officer; and that, if he was the agent of the company, he acted wholly outside of the scope of his authority when he assaulted the plaintiff. We think both of these contentions are untenable. Mr. James was the regularly employed agent of the company and had charge of the station. He called Mr. Roehl to his assistance in order to eject some persons from the building. Mr. Roehl was a peace officer in that vicinity, but upon this occasion he acted at the request of Mr. James. He was assisting the agent, and the company was bound by his acts as the acts of the agent. There is no claim that any of the persons in the station were misbehaving, or were rude or offensive in any way in the presence of Mr. Roehl, except that they were occupying seats within the station in order to keep warm. Under these circumstances it was the duty of the agent to know, and to inform Mr. Roehl, who the passengers were in the station, and who were entitled to remain. If the agent had personally committed the assault, the company would clearly be liable. The fact that it was committed by one who was called in by the agent would not relieve the company, unless such person acted wantonly without the scope of his authority. It is true the agent had told Mr. Roehl that he would notify those to leave who were not entitled to remain, and that while he was doing so Mr. Roehl assumed that the plaintiff had been, or would be, notified, and assaulted him. Up to this time the plaintiff did not know what the agent or Mr. Roehl desired. The plaintiff being a passenger was entitled to protection, and when it was shown that he was assaulted by one acting at the request of an agent of the company, this clearly made a *prima facie* case to go to the jury, for it was the duty of the agent to notify the

person called to his assistance who the passengers were before permitting him to make an assault, and such failure was at least negligence. The record does not show the exact number of passengers in the room, but it shows there were not many, probably not to exceed five or six; so that it would have been a simple matter to have pointed them out to Mr. Roehl. In this way the assault upon the plaintiff would have been avoided. There was no error, therefore, in submitting the case to the jury.

In the course of the instructions to the jury the court said:

"I charge you that a person that goes within one of the depots of a railroad company and there purchases a ticket and is compelled to wait until the coming of a train to transport him from that depot provided by the defendant company, that he at once becomes a passenger and that it is the duty of the company then to use as against its own machinery and its own employees toward him the highest degree of care for his protection and safeguarding."

After the jury had retired, the court recalled the jurors, and said to them:

"My attention has been called to my phraseology in my instruction given to you respecting the duty of the railroad company to exercise toward its passengers the highest degree of care. That was given to you without any qualifying words. You are to understand by the terms 'highest degree of care' that it means the highest degree of care compatible with the safe and reasonable conduct of its business. The railroad company is not an insurer to any passenger that they will not be assaulted; that they will not have accidents; but the law does hold them to the exercise as against its own machinery and appliances, its cars and the operation of its road and the conduct of its employees, to the exercise of the highest degree of care compatible with the conduct—the ordinary conduct and course of its business that a reasonably prudent man would give."

It is argued by the appellant that this instruction is erroneous, because it injects into the case the question of care in regard to the use of machinery and appliances, when there

was no such issue in the case; and also because the degree of care in regard to passengers waiting at a station is ordinary care and not the highest degree, as is required in the use of machinery and appliances and the operation of trains. There was no necessity for the court to make any reference to machinery or appliances, for there was no issue in regard thereto. But it is plain that no prejudicial error can be based thereon, for the issue was clear and well understood by the jury that the want of care complained of was on the part of the agent of the company. There was no other contention. The reference by the court to machinery and appliances did not, and was not intended to, inject any other issue into the case. The instruction under consideration, in substance, charges that it was the duty of the appellant to use the highest degree of care for the protection of its passengers against the conduct of its employees, and that the highest degree of care meant the highest degree of care "that an ordinarily prudent man would give" in the ordinary conduct of his business. In other parts of the instructions the court, in a number of instances, told the jury, in substance, that the plaintiff could not recover if the railway company used reasonable care to prevent the assault, and such like expressions.

But, assuming that the court meant to instruct the jury by this instruction that the railway company was bound to use the highest degree of care to prevent the assault, we think the instruction was not error. The rule is stated in 6 Cyc., page 600, as follows:

"The duty of the carrier to protect the passenger must be discharged by means of his servants engaged in carrying out the transportation contracted for. Therefore if any servant of the carrier while thus engaged assaults a passenger or otherwise infringes the right of protection to which he is entitled, the carrier is liable irrespective of whether the servant in the thing done was acting for his master or for his own purposes. . . . So long as the passenger is being transported, or is on the carrier's premises legitimately in connection with such transportation, and the servant is there

employed about the business of the carrier in his relation to the passenger, the duty of protection exists."

It is conceded in this case that the respondent had purchased his ticket, and was rightfully in the waiting room, and was orderly. He was, therefore, a passenger, entitled to protection as such. If Mr. James, the agent in charge of the station, had made the assault himself, there could be no question of care in the case, and no doubt about respondent's right to recover. The fact that Mr. James called Mr. Roehl to his assistance in removing persons who were not passengers, did not relieve the appellant of the positive duty to protect the passenger from assault by its employees. Mr. James was required, therefore, not only to notify Mr. Roehl who the passengers were, but to prevent his assault upon the passengers. Mr. Roehl, for the purpose of clearing the waiting room in question, was acting in the place of the agent. He was not a third party for whose acts the company was bound to use only ordinary care to prevent injury, as in the cases cited in the appellants' brief. The cases do not appear to be in harmony upon the question of the degree of care. owing by a carrier to a passenger, in regard to the safety of its stations and facilities. Some of the cases hold that ordinary care only is required, while others hold that the highest degree of care is necessary. The case of *Fremont etc. R. Co. v. Hagblad,* 72 Neb. 773, 101 N. W. 1033, 106 N. W. 1041, 4 L. R. A. (N. S.) 254, a case decided in the state of Nebraska, cites many of the cases upon that question, but we are of the opinion that, under the conceded facts in this case, if the question of care is to be considered at all, the agent of the company was bound by the highest degree of care, and the instruction was not error.

We are satisfied, however, that the verdict was excessive. No serious personal injury was inflicted upon the respondent. He suffered pain for about thirty-six hours, and also some inconvenience for about thirty days. But he suffered no pecuniary loss or loss of time. After the agent discovered

that Mr. Roehl had struck the respondent, he called attention to the fact that a mistake had been made, and no further effort was made to eject respondent from the station, or to further assault him. It is apparent that $500 would be ample compensation for the injury.

The questions presented by the appeal of Mr. Roehl are the same as the ones above considered and need not be considered further. The judgment appealed from is reversed, and the cause remanded with directions to grant a new trial unless the respondent, within thirty days after the remittitur is filed in the lower court, shall remit $500 from the verdict, in which event the judgment will stand affirmed for $500. Appellants to recover the costs of this appeal.

RUDKIN, C. J., CROW, PARKER, and DUNBAR, JJ., concur.